MURPHY, Judge.
 

 *51
 
 This case requires us to consider whether the Administrative Law Judge ("ALJ") erred in applying the
 
 McDonnell Douglas
 
 burden-shifting framework, rather than the
 
 Price Waterhouse
 
 mixed-motive burden-shifting framework, in determining a claim of alleged discrimination on the basis of sex. We conclude the ALJ applied the incorrect burden-shifting framework. While we reverse and remand for further proceedings, we dismiss as moot Appellant's argument that the ALJ erred in concluding that NCDPS improperly denied her veteran's preference.
 

 BACKGROUND
 

 On 7 February 2017, the North Carolina Department of Public Safety ("NCDPS") internally announced that it was accepting applications for a vacant Personnel Technician III position at the Western Foothills Regional Employment Office ("WFREO"). The
 
 *859
 
 posting described the position as the salary administration specialist and assistant manager of
 
 *52
 
 WFREO. It stated that applicants must possess "[d]emonstrated knowledge and experience with using BEACON/SAP to include report generation" and "with salary administration in NC state government" and "[c]onsiderable knowledge of state personnel policies and procedures related to recruitment, employment and salary administration." At the time of the job posting, the entire staff of WFREO was female.
 

 Appellant, Wendy Johnson ("Johnson"), was a female employed by NCDPS as an Administrative Services Assistant V at Wilkes Correctional Center when she applied for the position at WFREO. Johnson had a high school education and 150 months of experience in State government positions. Several other NCDPS employees applied for the position, and an independent "screener" narrowed the applicant pool to seven individuals to be interviewed based on selective criteria, including the candidates' education and experience and related knowledge, skills, abilities, and competencies. The interview pool consisted of two male and five female candidates, Johnson included.
 

 Lou Ann Avery ("Avery"), the manager of WFREO and the hiring manager for the vacant position, interviewed the seven candidates with Larry Williamson ("Williamson"), the Superintendent at Foothills Correctional Institution. At the interview, "each candidate was asked a series of 'benchmarked' questions. Three of the nine questions were not truly 'benchmarked', but were accompanied by vague and generalized instructions for scoring responses that left substantial room for subjective interpretation by the interviewer in scoring those questions." Johnson received an overall interview score of "average." Of the candidates interviewed, only one candidate, a male, scored "above average."
 

 Avery decided to offer the male ("John Doe") the position and submitted her "Request for Candidate Pre-Approval" to NCDPS. The Request stated the following under "justification":
 

 WFREO is recommending [John Doe] for the position of Personnel Tech III. Mr. [Doe] has a Bachelor's degree and 104 months experience above minimum in Human Resources, NCDPS and private sector. Mr. [Doe] brings experience in Beacon, Benefits, NeoGov, BobJ reports and supervisory. On February 22, 2017 we interviewed a total of 7 applicants. Three applicants scored Average, three scored Below Average, Mr. [Doe] was the only Above Average score.
 
 Promoting Mr. [Doe] to the WFREO will also add diversity to an all female staff.
 
 I am recommending $ 42,159 salary for Mr. [Doe], a 10% increase from his current salary.
 

 *53
 
 (emphasis added). Lisa Murray ("Murray") at NCDPS approved Avery's Request without making any alterations to the justification.
 

 After Johnson was informed that she was not selected for the position, she spoke with Natalie Crookston ("Crookston"), another applicant for the position who was not selected. Crookston stated she had spoken with Avery, who "implied in the conversation" that Doe was selected for the position because he was a male. Johnson subsequently filed a
 
 Petition for a Contested Case Hearing
 
 in the Office of Administrative Hearings ("OAH"), alleging discrimination based on sex and failure to receive priority consideration for veteran's preference. The matter was heard before an ALJ in Catawba County, who concluded, "Petitioner failed to carry her burden to demonstrate by a preponderance of the evidence that the Respondent's hiring decision was discriminatory." The ALJ also concluded "Petitioner failed to meet her burden of proof that Respondent failed to properly apply the Veterans' Preference in violation of [N.C.G.S.] § 126-82." Johnson appeals.
 

 ANALYSIS
 

 A. Discrimination on the Basis of Sex
 

 Johnson argues the ALJ erred in applying the
 
 McDonnell Douglas
 
 burden-shifting framework rather than the
 
 Price Waterhouse
 
 framework. We agree.
 

 *860
 

 1. Standard of Review
 

 N.C.G.S. § 150B-51(b) provides the applicable standards of review in appeals of final decisions by an administrative tribunal:
 

 (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence admissible ... in view of the entire record as submitted; or
 
 *54
 
 (6) Arbitrary, capricious, or an abuse of discretion.
 

 N.C.G.S. § 150B-51(b) (2017).
 

 "Where the asserted error falls under subsections 150B-51(b)(5) and (6), we apply the whole record standard of review."
 
 Whitehurst v. East Carolina Univ.
 
 , --- N.C. App. ----, ----,
 
 811 S.E.2d 626
 
 , 631 (2018). Under this standard, we "examine all the record evidence-that which detracts from the agency's findings and conclusions as well as that which tends to support them-to determine whether there is substantial evidence to justify the agency's decisions. Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion."
 

 Id.
 

 (citations and internal quotation marks omitted).
 

 "We conduct a
 
 de novo
 
 review of an asserted error of law falling under subsections 150B-51(b)(1)-(4) ...."
 

 Id.
 

 at ----,
 
 811 S.E.2d at 631
 
 . "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the ALJ."
 

 Id.
 

 (citation and internal quotations marks omitted).
 

 2. Legal Frameworks
 

 Under N.C.G.S. § 126-34.02, "[a]n applicant for State employment, a State employee, or former State employee may allege discrimination or harassment based on ... sex ... if the employee believes that he or she has been discriminated against in his or her application for employment ...." N.C.G.S. § 126-34.02(b)(1) (2017). "[W]e look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases."
 
 N.C. Dep't. of Correction v. Gibson
 
 ,
 
 308 N.C. 131
 
 , 136,
 
 301 S.E.2d 78
 
 , 82 (1983).
 

 There are multiple avenues by which a petitioner may establish a causal connection between an adverse employment action and a discriminatory motive on the basis of sex.
 
 Newberne v. Dep't of Crime Control and Public Safety
 
 ,
 
 359 N.C. 782
 
 , 790,
 
 618 S.E.2d 201
 
 , 207 (2005). A petitioner may rely on direct evidence of a single discriminatory motive, such as an "employer's admission that it took adverse action against the plaintiff solely because of the" plaintiff's sex or protected characteristic.
 

 Id.
 

 (citation, alterations, and internal quotation marks omitted). Recognizing that such evidence is rare, the U.S. Supreme Court created a second avenue by which a plaintiff may establish a claim of sex discrimination based on circumstantial evidence.
 
 McDonnell Douglas Corp. v. Green
 
 ,
 
 411 U.S. 792
 
 , 802,
 
 93 S.Ct. 1817
 
 ,
 
 36 L. Ed. 2d 668
 
 , 677-78 (1973) ;
 
 Newberne
 
 ,
 
 359 N.C. at 790
 
 ,
 
 618 S.E.2d at 207
 
 . The
 
 McDonnell Douglas
 
 framework created a burden-shifting scheme:
 

 *55
 
 Under the
 
 McDonnell Douglas
 
 / [
 
 Texas Dept. of Community Affairs v.
 
 ]
 
 Burdine
 
 [
 
 450 U.S. 248
 
 ,
 
 101 S.Ct. 1089
 
 ,
 
 67 L.Ed.2d 207
 
 (1981) ] proof scheme, once a plaintiff establishes a prima facie case of unlawful [discrimination], the burden shifts to the defendant to articulate a lawful reason for the employment action at issue. If the defendant meets this burden of production,
 
 *861
 
 the burden shifts back to the plaintiff to demonstrate that the defendant's proffered explanation is pretextual. The ultimate burden of persuasion rests at all times with the plaintiff.
 

 Newberne
 
 ,
 
 359 N.C. at 791
 
 ,
 
 618 S.E.2d at 207-08
 
 (citations omitted).
 

 A successful claim under the
 
 McDonnell Douglas
 
 framework assumes a single discriminatory motive and that any preferred legitimate motive is pretextual. Yet, there are situations where an employment decision is the result of both legitimate and discriminatory motives. This third avenue of proof is widely referred to as a "mixed-motive" case, first recognized by the U.S. Supreme Court in
 
 Price Waterhouse v. Hopkins
 
 ,
 
 490 U.S. 228
 
 ,
 
 109 S.Ct. 1775
 
 ,
 
 104 L. Ed. 2d 268
 
 (1989). The plurality opinion created a new burden-shifting framework for mixed-motive cases where, "once a plaintiff ... shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role."
 

 Id.
 

 at 244-45
 
 ,
 
 109 S.Ct. at 1787-88
 
 ,
 
 104 L. Ed. 2d at 284
 
 . Justice O'Connor concurred, stating, "In my view, in order to justify shifting the burden on the issue of causation to the defendant, a disparate treatment plaintiff must show by direct evidence that an illegitimate criterion was a substantial factor in the decision."
 

 Id.
 

 at 276
 
 ,
 
 109 S.Ct. at 1804
 
 ,
 
 104 L. Ed. 2d. at 304
 
 (O'Connor, J., concurring).
 

 Congress subsequently codified and, on multiple occasions, modified the mixed-motive framework. Under the Civil Rights Act of 1991:
 

 a plaintiff succeeds on a mixed-motive claim if she demonstrates that ... sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice. Once such a showing has been made, the employer cannot escape liability. However, through use of a limited affirmative defense, if an employer can demonstrate that it would have taken the same action in the absence of the impermissible motivating factor, it can restrict a plaintiff's damages to injunctive and declaratory relief, and attorney's fees and costs.
 

 *56
 

 Diamond v. Colonial Life Acc. Ins. Co.
 
 ,
 
 416 F.3d 310
 
 , 317 (4th Cir. 2005) (citations and internal quotation marks omitted). Yet, courts were still divided as to whether direct evidence of discrimination was required for a plaintiff to pursue a mixed-motive theory, with many relying on Justice O'Connor's concurrence in
 
 Price Waterhouse
 
 .
 
 Desert Palace, Inc. v. Costa
 
 ,
 
 539 U.S. 90
 
 , 95,
 
 123 S.Ct. 2148
 
 , 2152,
 
 156 L. Ed. 2d. 84
 
 , 91 (2003). In
 
 Desert Palace
 
 , based on a plain reading of 42 U.S.C. § 2000e-2(m), the U.S. Supreme Court held that "direct evidence of discrimination is not required in mixed-motive cases[.]"
 
 Desert Palace
 
 ,
 
 539 U.S. at 101-02
 
 ,
 
 123 S.Ct. at 2155
 
 ,
 
 156 L. Ed. 2d at 96
 
 .
 

 It is elementary that, while "we look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases[,]" those decisions are not binding authority.
 
 See
 

 N.C. Dep't of
 

 Corr. v. Gibson
 
 ,
 
 308 N.C. 131
 
 , 136,
 
 301 S.E.2d 78
 
 , 82 (1983). Our courts have not directly addressed the evidentiary showing required for a plaintiff alleging discrimination on the basis of sex to succeed on a mixed-motive theory. However, our Supreme Court addressed the proper mixed-motive framework for an unlawful retaliation claim under the Whistleblower Act in
 
 Newberne
 
 . The Court engaged in a similar analysis of the various avenues a plaintiff may use to establish a causal connection between protected activity and adverse employment action:
 

 Therefore, claims brought under the Whistleblower Act should be adjudicated according to the following procedures. First, the plaintiff must endeavor to establish a prima facie case of retaliation under the statute. The plaintiff should include any available direct evidence that the adverse employment action was retaliatory along with circumstantial evidence to that effect. Second, the defendant should present its case, including its evidence as to legitimate
 
 *862
 
 reasons for the employment decision. Third, once all the evidence has been received, the court should determine whether the
 
 McDonnell Douglas
 
 or
 
 Price Waterhouse
 
 framework properly applies to the evidence before it. If the plaintiff has demonstrated that he or she engaged in a protected activity and the defendant took adverse action against the plaintiff in his or her employment, and if the plaintiff has further established by
 
 direct evidence
 
 that the protected conduct was a substantial or motivating factor in the adverse employment action, then the defendant bears the burden to show that its legitimate
 
 *57
 
 reason, standing alone, would have induced it to make the same decision. If, however, the plaintiff has failed to satisfy the
 
 Price Waterhouse
 
 threshold, the case should be decided under the principles enunciated in
 
 McDonnell Douglas
 
 and
 
 Burdine
 
 , with the plaintiff bearing the burden of persuasion on the ultimate issue whether the employment action was taken for retaliatory purposes.
 

 Newberne
 
 ,
 
 359 N.C. at 794
 
 ,
 
 618 S.E.2d at 209-10
 
 (citations, alterations, and internal quotation marks omitted) (emphasis in original). In a footnote, our Supreme Court acknowledged that Justice O'Connor's concurrence and the direct evidence requirement has since been abrogated as acknowledged in
 
 Desert Palace
 
 , but nevertheless states this abrogation "applies only to claims brought under Title VII of the Civil Rights Act of 1964."
 
 Id.
 
 at 793-94,
 
 618 S.E.2d at 209, n.4
 
 .
 

 Given that sex is a protected characteristic analogous to the protected activity under the Whistleblower Act,
 
 Newberne
 
 requires us to apply its framework to claims of discrimination on the basis of sex under N.C.G.S. § 126-34.02.
 

 3. Discussion
 

 The ALJ made the following conclusions in its Final Decision:
 

 17. Petitioner has easily established the first three prongs of a prima facie case of sex discrimination for failure to promote. She belongs to a protected class, she applied for the Tech III position, and the Department doesn't dispute that Petitioner was qualified for the position. It is less clear that Petitioner was rejected under circumstances giving rise to an inference of unlawful discrimination. Nonetheless, the undersigned will proceed as though Petitioner satisfied all four elements of a prima facie case of sex discrimination.
 

 ...
 

 20. The Department has articulated a legitimate, nondiscriminatory basis for not selecting Petitioner for the promotion. Specifically, [Doe] was the most qualified candidate. [Doe] had more education (a bachelor's degree as compared to Petitioner's High School diploma), more supervisory experience, and was rated higher on the interview.
 

 Having determined, or at least assumed, that Johnson established a prima facie case of discrimination on the basis of sex and that NCDPS
 

 *58
 
 introduced evidence of a legitimate, nondiscriminatory reason for the employment action, the ALJ next determined whether Johnson offered direct evidence that sex was a substantial or motivating factor in the employment action.
 

 "In saying that [sex] played a motivating part in an employment decision, we mean that, if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be" the sex of applicant or employee.
 
 Price Waterhouse
 
 ,
 
 490 U.S. at 250
 
 ,
 
 109 S.Ct. at 1790
 
 ,
 
 104 L. Ed. 2d. at 287-88
 
 . Direct evidence of sex as a motiving factor "has been defined as evidence of conduct or statements that both reflect directly the alleged [discriminatory] attitude and that bear directly on the contested employment decision."
 
 Newberne
 
 ,
 
 359 N.C. at 792
 
 ,
 
 618 S.E.2d at 208-09
 
 (citation, alteration, and internal quotation marks omitted). Moreover, "direct evidence does not include stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself."
 

 Id.
 

 *863
 
 The ALJ concluded that Johnson failed to produce direct evidence that sex was a motivating factor in the employment action, making the
 
 Price Waterhouse
 
 mixed-motive framework inapplicable:
 

 30. Petitioner argues that she produced direct evidence of discrimination which would require the undersigned to employ the discrimination analysis set forth in Justice O'Connor's concurrence in Price Waterhouse v. Hopkins, instead of the McDonnell Douglas "burden shifting" analysis. ...
 

 31. Petitioner relies on Avery's notation in the request for candidate pre-approval that "promoting Mr. [Doe] to the WFREO will also add diversity to an all female staff" as direct evidence of discrimination. Avery's comment is not direct evidence of discrimination. To show discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decision maker involved in the adverse employment action. As discussed above, Avery was motivated to hire [Doe] because he was the most qualified candidate. Avery did not deny Petitioner the promotion because of her sex, nor did Avery promote [Doe] because of his sex.
 

 We agree with Johnson that Conclusion of Law #31 was made in error.
 

 *59
 
 The undisputed statement made by Avery that Doe "will also add diversity to an all female staff" is necessarily premised upon Doe's sex. That is, Doe adds diversity to an all-female staff
 
 because
 
 he is a male. Avery's use and reference to Doe's sex in the justification for hire, taken at face value, exhibit her view that his sex as a male was a benefit - a benefit that Johnson, as a female, could not offer simply by the nature of her sex. While gender may certainly "play a role in an employment decision in the benign sense that these are human characteristics of which decisionmakers are aware and about which they may comment in a perfectly neutral and nondiscriminatory fashion[,]" this is not that situation.
 
 Price Waterhouse
 
 ,
 
 490 U.S. at 277
 
 ,
 
 109 S.Ct. at 1805
 
 ,
 
 104 L. Ed. 2d. at 305
 
 (O'Connor, J., concurring). NCDPS argues that "Johnson's contention that the reference to diversity alone constituted direct evidence of discriminatory motive is misplaced[,]" and cites several federal district court cases addressing diversity policies in support of this argument.
 
 See
 

 Bernstein v. St. Paul Cos., Inc.,
 

 134 F. Supp. 2d 730
 
 , 739 n. 12 (D. Md. 2001) ;
 
 Reed v. Agilent Techs., Inc.,
 

 174 F. Supp. 2d 176
 
 , 185 (D. Del. 2001). These cases, however, are inapposite. This is not a challenge to an entity's diversity policy or the existence of a general policy promoting diversity awareness - it is a challenge to a specific hiring decision.
 

 Additionally, Avery's statement bore directly on the contested employment action and was not made by an individual unrelated to the decisionmaking process. It strains credulity to argue that Avery's statement, made on an official employment document listing the "
 
 JUSTIFICATION
 
 " for hire, does not bear directly on the contested employment action - which candidate to hire. The ALJ found that "Avery was the decision maker in the hiring process for the Tech III position." Her statement regarding Doe adding diversity to an all-female staff was made in Avery's "Request for Candidate Pre-Approval." Murray then adopted Avery's recommendation, including the justification, wholesale and without making any alterations. This remark was also not made outside of the decisionmaking process.
 

 For these reasons, the ALJ erred in concluding that this evidence was not direct evidence and thus erred in failing to apply the
 
 Price Waterhouse
 
 mixed-motive framework.
 
 [1]
 
 The State argues that "assuming,
 
 *60
 

 arguendo
 
 , that the evidence presented by Johnson is properly characterized as direct
 
 *864
 
 evidence, the virtual entirety of the remaining evidence presented below demonstrated that the Department would have made the same hiring decision regardless of [Doe's] gender." It contends, "under either analytical framework, Johnson's discrimination claim failed as a matter of law and the evidence supported a finding that no sex discrimination occurred." It is beyond our role as an appellate court to reweigh evidence under a fundamentally different burden-shifting framework.
 
 See
 

 Fuller v. Phipps
 
 ,
 
 67 F.3d 1137
 
 , 1141 (4th Cir. 1995) ("Employment discrimination law recognizes an important distinction between mixed-motive and pretext cases. The distinction is critical, because plaintiffs enjoy more favorable standards of liability in mixed-motive cases ...."),
 
 overruled in part by
 

 Desert Palace, Inc. v. Costa
 
 ,
 
 539 U.S. 90
 
 ,
 
 123 S.Ct. 2148
 
 ,
 
 156 L. Ed. 2d 84
 
 (2003). This is solely the role of the ALJ. As such, our holding goes no further than to reverse and remand for the ALJ to apply the correct framework, reweigh the evidence accordingly, and issue a new Final Decision.
 

 B. Veteran's Preference
 

 Johnson also contends the trial court erred in concluding that she failed to meet her burden of proof that NCDPS failed to properly apply a veterans' preference. We disagree.
 

 N.C.G.S. § 126-80 states:
 

 It shall be the policy of the State of North Carolina that, in appreciation for their service to this State and this country during a period of war, and in recognition of the time and advantage lost toward the pursuit of a civilian career, veterans shall be granted preference in employment for positions subject to the provisions of this Chapter with every State department, agency, and institution.
 

 N.C.G.S. § 126-80 (2017). It is the applicant's burden to "submit a DD Form 214, Certificate of Release or Discharge from Active Duty, along with a State Application for Employment ... to the appointing authority." 25 N.C.A.C. 1H.1102. The appointing authority is then "responsible for verifying eligibility and may request additional documentation as is necessary to ascertain eligibility."
 

 Id.
 

 The veterans' preference applies in limited circumstances when an applicant is applying for a promotion:
 

 (d) For promotion, reassignment and horizontal transfer, after applying the preference to veterans who are current State employees as explained under Subparagraph (a)(1)
 

 *61
 
 or (2) of this Rule, the eligible veteran receives no further preference and competes with all other applicants who have substantially equal qualifications.
 

 25 N.C.A.C. 1H.1104(d).
 

 We need not reach the question of whether the ALJ erred in concluding that Johnson failed to meet her burden that NCDPS improperly applied the veterans' preference. Johnson concedes that, even if we were to assume the preference was improperly applied, that failure was harmless in her case, as she was granted an interview and competed with all other applicants with substantially equal qualifications. We dismiss this argument as moot.
 

 CONCLUSION
 

 Johnson presented direct evidence that sex was a substantial and motivating factor in the adverse employment action taken against her. Accordingly, the ALJ erred in failing to apply the
 
 Price Waterhouse
 
 burden-shifting framework, and we reverse and remand for further proceedings under the proper framework. Johnson's argument that NCDPS failed to properly apply the veteran's preference is dismissed.
 

 REVERSED AND REMANDED IN PART; DISMISSED IN PART.
 

 Judges DILLON and ARROWOOD concur.
 

 [1]
 

 Johnson challenges numerous Findings of Fact, arguing these challenged findings "led [the ALJ] to conclude that
 
 Price Waterhouse
 
 did not apply to this case." We have concluded that, based upon the undisputed statement in the justification for the recommendation to hire Doe, the ALJ erred in failing to apply
 
 Price Waterhouse
 
 and that a new determination under that framework is required. We need not address these additional Findings of Fact.