IN THE SUPREME COURT OF NORTH CAROLINA

No. 22PA14

Filed 18 December 2015

THOMAS C. WETHERINGTON,
      Petitioner

      v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY (f/k/a N.C. DEPARTMENT OF CRIME CONTROL & PUBLIC SAFETY; NORTH CAROLINA HIGHWAY PATROL),
      Respondent


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 752 S.E.2d 511 (2013), affirming a decision and order entered on 14 December 2012 by Judge Howard E. Manning, Jr. in Superior Court, Wake County. On 18 December 2014, the Supreme Court allowed petitioner's conditional petition for discretionary review as to additional issues. Heard in the Supreme Court on 19 May 2015.

*McGuinness Law Firm, by J. Michael McGuinness, for petitioner-appellee/appellant.*

*Roy Cooper, Attorney General, by John F. Maddrey, Solicitor General, and Thomas J. Ziko, Special Counsel, for respondent-appellant/appellee.*

*George J. Franks IV and Richard C. Hendrix for National Association of Police Organizations, amicus curiae.*

*Crabbe, Brown & James, LLP, by Larry H. James, pro hac vice, and Christina L. Corl, pro hac vice, for National Fraternal Order of Police; and Richard Hattendorf for North Carolina State Lodge of Fraternal Order of Police, amici curiae.*

*Edelstein and Payne, by M. Travis Payne, for Professional Fire Fighters and Paramedics of North Carolina, amicus curiae.*

*Bailey & Dixon, LLP, by J. Heydt Philbeck and Sabra J. Faires, for Southern States Police Benevolent Association and North Carolina Police Benevolent Association, amici curiae.*

*Law Offices of Michael C. Byrne, by Michael C. Byrne, for State Employees Association of North Carolina, amicus curiae.*

JACKSON, Justice.

On 4 August 2009, Thomas Wetherington (petitioner) was dismissed from the North Carolina State Highway Patrol (the Patrol) for alleged violations of the Patrol's truthfulness policy. The State Personnel Commission (SPC) determined that petitioner's dismissal was supported by just cause. Petitioner filed for judicial review in Superior Court, Wake County, and the superior court reversed, concluding that petitioner's "misconduct . . . did not amount to just cause for dismissal" and that "the decision to dismiss [petitioner] was arbitrary and capricious." On appeal, the North Carolina Court of Appeals affirmed the superior court's order. *Wetherington v. N.C. Dep't of Crime Control & Pub. Safety*, ___ N.C. App. ___, 752 S.E.2d 511 (2013). We allowed the petition for discretionary review filed by respondent, the North Carolina Department of Crime Control and Public Safety,[1] and the conditional petition for discretionary review filed by petitioner. Because it appears that the official who dismissed petitioner proceeded under a misapprehension of the law, namely that he

---

[1] Subsequently, this Court allowed respondent's motion to substitute the North Carolina Department of Public Safety as respondent.

had no discretion over the range of discipline he could administer, we now modify and affirm the opinion of the Court of Appeals and remand.

Petitioner was employed as a Trooper with the Patrol. On 21 May 2009, a complaint was filed against petitioner with the Patrol's Internal Affairs Section alleging that petitioner had provided contradictory statements about an incident in which he lost his campaign hat and in doing so had violated the Patrol's truthfulness policy. This policy states: "Members shall be truthful and complete in all written and oral communications, reports, and testimony. No member shall willfully report any inaccurate, false, improper, or misleading information." After an investigation, the Patrol dismissed petitioner on 4 August 2009.

On 23 October 2009, petitioner filed a petition for a contested case hearing in the Office of Administrative Hearings (OAH), and a hearing was conducted on 17 and 18 March 2010. On 3 September 2010, the administrative law judge (ALJ) filed a recommended decision making findings of fact and concluding that the Patrol's decision to dismiss petitioner was supported by the evidence. The ALJ made extensive findings of fact that included:

> 5. On March 29, 2009, Petitioner, while on duty, observed a pickup truck pulling a boat and made a traffic stop of that truck on US 70 at approximately 10:00 pm. During that traffic stop, Petitioner discovered two loaded handguns in the truck and smelled the odor of alcohol coming from the interior of the truck. The two male occupants of the truck were cooperative and not

belligerent. Petitioner took possession of the handguns. At the conclusion of that traffic stop, Petitioner proceeded to a stopped car that had pulled off to the side of the road a short distance in front of the truck and boat trailer.

6. Petitioner testified that he first noticed his hat missing during his approach to the car parked in front of the truck. Petitioner heard a crunch noise in the roadway and saw a burgundy eighteen-wheeler drive by.

7. Petitioner testified that after the conclusion [of] his investigation of the stopped car, he looked for his hat. Petitioner found the gold acorns from his hat in the right hand lane near his patrol vehicle. The acorns were somewhat flattened.

. . . .

9. After searching for, but not locating his hat, Petitioner contacted Sergeant Oglesby, his immediate supervisor, and told him that his hat blew off of his head and that he could not find it.

. . . .

11. Trooper Rink met Petitioner on the side of the road of US 70. Trooper Rink asked Petitioner when he last saw his hat. Petitioner said he did not know. . . . Petitioner said that he was going down the road . . . and was putting something in his seat when he realized he did not have his hat. Petitioner then indicated that he turned around and went back to the scene of the traffic stops and that is when he found the acorns from his hat. Petitioner was very upset and Trooper Rink told Petitioner that everybody loses stuff and that if Petitioner did not know what happened to his hat, then he should just tell his Sergeants that he didn't know what happened to it. Petitioner replied that it was a little late for that because he already had told his Sergeant that a truck came by and blew it off of his head.

. . . .

13. The testimony of Trooper Rink provides substantial evidence that Petitioner did not know what happened to his hat, was untruthful to Sergeant Oglesby when he said it blew off of his head, and that Petitioner's untruthfulness was willful.

. . . .

15. The next day, March 30, 2009, Sergeant Oglesby and several other members of the Patrol looked for Petitioner's hat.

16. Sergeant Oglesby had a detailed conversation with Petitioner on the side of the road regarding how the hat was lost. During the conversation, Petitioner remained consistent with his first statement to Sergeant Oglesby from the night of March 29, 2009 as he explained to Sergeant Oglesby that a gust of wind blew his hat off of his head. Petitioner continued stating that the wind was blowing from the southeast to the northwest. Petitioner said he turned back towards the direction of the roadway and saw a burgundy eighteen[-]wheeler coming down the road so he could not run out in the roadway and retrieve his hat. Petitioner then heard a crunch and did not see his hat anymore.

. . . .

18. Petitioner was not truthful to Sergeant Oglesby on March 30, 2009, when he explained how he lost his hat.

. . . .

20. Petitioner testified that, approximately three to four days after the loss of the hat, he suddenly realized that the hat did not blow off of his head, but that he had placed the hat on the light bar of his Patrol vehicle and it blew off of the light bar. Petitioner never informed any supervisors of this sudden realization.

21. Approximately three weeks after the hat was lost, Petitioner received a telephone call from Melinda Stephens, during which Petitioner was informed that her

nephew, the driver of the truck and boat trailer on March 29, 2009, had Petitioner's hat.

22.  Petitioner informed Sergeant Oglesby that his hat had been found.

23.  Petitioner's hat subsequently was returned to Sergeant Oglesby.  When returned, the hat was in good condition and did not appear to have been run over.

24.  Due to the inconsistencies in Petitioner's statements and the condition of the hat, First Sergeant Rock and Sergeant Oglesby called Petitioner to come in for a meeting.  During the meeting, First Sergeant Rock asked Petitioner to clarify that the hat blew off of his head and that the hat was struck by a car.  Petitioner said yes.  First Sergeant Rock then pulled Petitioner's hat out of the cabinet and told Petitioner that his story was not feasible because the hat did not appear to have been run over.  At that point, Petitioner broke down in tears and said he wasn't sure what happened to his hat.  He didn't know if it was on the trunk lid of the truck, the boat, or behind the light bar, and blew off.  Petitioner stated that he told Sergeant Oglesby that the hat blew off his head because he received some bad counsel from someone regarding what he should say about how the hat was lost.

25.  During his meeting with First Sergeant Rock and Sgt. Oglesby, Petitioner was untruthful when he told First Sergeant Rock that the hat blew off of his head because by Petitioner's own testimony, three days after losing his hat he realized that he placed it on his light bar. However, three weeks after the incident, in the meeting with First Sergeant Rock and Sergeant Oglesby he continued to claim that the hat blew off of his head.  It wasn't until First Sergeant Rock took the hat out and questioned Petitioner more that Petitioner admitted that the hat did not blow off of his head, but blew off of the light bar.  Therefore, even if Petitioner was confused on March 29, 2009, as he claims, he still was being untruthful to his Sergeants by continuing to tell them that the hat blew off of his head . . . .

. . . .

> 33.     Petitioner's untruthful statements to First Sergeant Rock and Sergeant Oglesby were willful and were made to protect himself against possible further reprimand because of leaving the patrol vehicle without his cover.

(Citations omitted.)  The findings also noted that Colonel Randy Glover ultimately was responsible for determining what type of discipline to impose upon petitioner for his conduct.  The ALJ observed that Colonel Glover "considers the policy on truthfulness so paramount to the organization that, in his opinion, a member who is untruthful must be terminated"; however, the ALJ found that Colonel Glover "was aware that he had discretion" regarding what type of discipline to impose and "exercised that discretion in deciding to dismiss [p]etitioner."  The ALJ concluded that "Respondent had just cause to discipline Petitioner in the form of dismissal."  The SPC adopted the ALJ's findings of fact and conclusions of law, found that "Respondent met its burden of proving that it had just cause to dismiss Petitioner," and affirmed.

On 25 February 2011, petitioner filed for judicial review in Superior Court, Wake County, and on 14 December 2012, the superior court entered an order reversing the final decision of the SPC.  Although the superior court determined that the evidence supported the agency's findings that petitioner engaged in untruthful conduct and that his actions constituted unacceptable personal conduct, the court ultimately concluded that the conduct did not provide just cause for dismissal.  In

addition, the superior court ruled that the decision to dismiss petitioner "was arbitrary and capricious" and that Colonel Glover failed to "consider alternative, lesser sanctions against [petitioner] over this incident involving the temporary loss of a $50.00 hat during a legitimate traffic stop and [petitioner's] variable recollections of the circumstances under which the hat disappeared."

Respondent appealed to the Court of Appeals, and petitioner filed a cross appeal. On 17 December 2013, the Court of Appeals filed a unanimous, published opinion affirming the superior court's order. *Wetherington*, ___ N.C. App. at ___, ___, 752 S.E.2d at 511, 517. We allowed both respondent's petition for discretionary review and petitioner's conditional petition for discretionary review.

Respondent argues that the Court of Appeals erred by affirming the superior court's order reversing the SPC's decision. We disagree. Because Colonel Glover did not understand that he had discretion to consider the full range of potential discipline, his decision was "[a]ffected by [an] error of law." *See* N.C.G.S. § 150B-51(b)(4) (2009).[2]

"On judicial review of an administrative agency's final decision, the substantive nature of each assignment of error dictates the standard of review." *N.C.*

---

[2] The General Assembly amended section 150B-51 in 2011. Act of June 18, 2011, ch. 398, sec. 27, 2011 N.C. Sess. Laws 1678, 1689. The amendments apply only to contested cases commenced on or after 1 January 2012. *Id.*, sec. 63, at 1701. The petition for a contested case hearing in the case *sub judice* was filed 23 October 2009.

*Dep't of Env't & Nat. Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004) (citing, *inter alia*, *ACT-UP Triangle v. Comm'n for Health Servs.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997), *questioned in Shackleford-Moten v. Lenoir Cty. Dep't of Soc. Servs.*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002), *disc. rev. denied*, 357 N.C. 252, 582 S.E.2d 609 (2003), and *State ex rel. Utils. Comm'n v. Bird Oil Co.*, 302 N.C. 14, 21, 273 S.E.2d 232, 236 (1981)).   The reviewing court may, *inter alia*,

> reverse or modify the agency's decision . . . if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or
>
> (6) Arbitrary, capricious, or an abuse of discretion.

N.C.G.S. § 150B-51(b).  This Court has explained that if "the gravamen of an assigned error is that the agency violated subsections 150B-51(b)(1), (2), (3), or (4) . . . a court engages in *de novo* review." *Carroll*, 358 N.C. at 659, 599 S.E.2d at 895 (citing, *inter alia*, *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 665, 509 S.E.2d 165, 171 (1998)). "Under the *de novo* standard of review, the trial court 'consider[s] the matter anew[ ] and freely substitutes its own judgment for the agency's.' " *Id.* at 660, 599 S.E.2d at

895 (quoting *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (alterations in original)).

Chapter 126 of our General Statutes provides that "[n]o career State employee subject to the State Personnel Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." N.C.G.S. § 126-35(a) (2009). A career State employee is defined as

> a State employee or an employee of a local entity who is covered by this Chapter pursuant to G.S. 126-5(a)(2) who:
>
> (1) Is in a permanent position appointment; and
>
> (2) Has been continuously employed by the State of North Carolina or a local entity as provided in G.S. 126-5(a)(2) in a position subject to the State Personnel Act for the immediate 24 preceding months.

*Id.* § 126-1.1 (2009).

As authorized by N.C.G.S. § 126-35(a), the SPC has adopted rules that define just cause for discipline of a career state employee. *See* 25 NCAC 01J .0604 (June 2014). These rules establish two grounds for discipline: unsatisfactory job performance and unacceptable personal conduct. *Id.* Unacceptable personal conduct is defined, *inter alia*, as

> (a) conduct for which no reasonable person should expect to receive prior warning;
>
> (b) job-related conduct which constitutes a violation of state or federal law;

(c) conviction of a felony or an offense involving moral turpitude that is detrimental to or impacts the employee's service to the State;

(d) the willful violation of known or written work rules;

(e) conduct unbecoming a state employee that is detrimental to state service[.]

25 NCAC 01J .0614(8) (June 2014).

"Nonetheless, the fundamental question in a case brought under N.C.G.S. § 126-35 is whether the disciplinary action taken was 'just.' Inevitably, this inquiry requires an irreducible act of judgment that cannot always be satisfied by the mechanical application of rules and regulations." *Carroll*, 358 N.C. at 669, 599 S.E.2d at 900. Just cause "is a 'flexible concept, embodying notions of equity and fairness,' that can only be determined upon an examination of the facts and circumstances of each individual case." *Id.* at 669, 599 S.E.2d at 900-01 (citations omitted) (quoting *Crider v. Spectralite Consortium, Inc.*, 130 F.3d 1238, 1242 (7th Cir. 1997)). It follows that, pursuant to *Carroll*'s "flexible" definition of "just cause," Colonel Glover has discretion, as a matter of law, in dismissing an employee for violating the Patrol's truthfulness policy.

Here, the ALJ found that petitioner behaved as alleged and that his behavior violated a written work rule. The error of law occurred when Colonel Glover was unaware of his responsibility to exercise discretion. Colonel Glover's testimony at the

OAH hearing establishes that he decided to dismiss petitioner not based upon consideration of the facts and circumstances of petitioner's conduct, but instead because of his erroneous view that any violation of the Patrol's truthfulness policy must result in dismissal. Colonel Glover testified that because petitioner's conduct "was obviously a violation of the truthfulness policy," dismissal was required, and he repeatedly asserted that he "had no choice" to impose any lesser punishment. After petitioner's counsel asked Colonel Glover whether, "when there is a substantiated or adjudicated finding of untruthfulness . . . [a trooper] would necessarily need to be terminated," Colonel Glover reiterated that if "that's the violation, again . . . I have no choice because that's the way I view it." Petitioner's counsel then asked, "[D]oes that mean if you find a substantiated or adjudicated violation of the truthfulness policy . . . that you don't feel like that gives you any discretion as Colonel to do anything less than termination?" Colonel Glover agreed with that statement.

As written, the truthfulness policy applies to "all written and oral communications," and it applies to a wide range of untruthful, inaccurate, "improper," or "misleading" statements. Nothing in the text of the policy limits its application to statements related to the trooper's duties, the Patrol's official business, or any other significant subject matter. Notwithstanding the potentially expansive scope of this policy, Colonel Glover confirmed that he could not impose a punishment other than dismissal for any violation, apparently regardless of factors such as the severity of the violation, the subject matter involved, the resulting harm, the trooper's work

history, or discipline imposed in other cases involving similar violations. We emphasize that consideration of these factors is an appropriate and necessary component of a decision to impose discipline upon a career State employee for unacceptable personal conduct.

Colonel Glover's mistaken view that he had no discretion over the appropriate measure of discipline was a misapprehension of the law, which subjects his decision to reversal or modification pursuant to N.C.G.S. § 150B-51(b)(4) because it is "[a]ffected by other error of law." The approach employed by Colonel Glover in applying a fixed punishment of dismissal for any violation is antithetical to the flexible and equitable standard described in *Carroll* and is at odds with both the ALJ's and the SPC's finding of fact that Colonel Glover exercised discretion in reaching his decision to dismiss petitioner.

Application of an inflexible standard deprives management of discretion. While dismissal may be a reasonable course of action for dishonest conduct, the better practice, in keeping with the mandates of both Chapter 126 and our precedents, would be to allow for a range of disciplinary actions in response to an individual act of untruthfulness, rather than the categorical approach employed by management in this case.

As such, by upholding respondent's use of a per se rule of mandatory dismissal for all violations of a particular policy, the SPC failed to examine the facts and

circumstances of petitioner's individual case as required by this state's jurisprudence. For these reasons, we conclude that the superior court correctly reversed the SPC's decision.

Nevertheless, the superior court determined that petitioner's conduct did not constitute just cause for dismissal, and the Court of Appeals affirmed that determination. Because we conclude that Colonel Glover's use of a rule requiring dismissal for all violations of the Patrol's truthfulness policy was an error of law, *see* N.C.G.S. § 150B-51(b)(4), we find it prudent to remand this matter for a decision by the employing agency as to whether petitioner should be dismissed based upon the facts and circumstances and without the application of a per se rule. As a result, we do not decide whether petitioner's conduct constitutes just cause for dismissal.

Accordingly, the decision of the Court of Appeals is modified and affirmed, and the case is remanded to the Court of Appeals with instructions to that court to remand to the Superior Court, Wake County for subsequent remand to the SPC and further remand to the employing agency for additional proceedings not inconsistent with this opinion. We further conclude that petitioner's conditional petition for discretionary review was improvidently allowed.

MODIFIED, AFFIRMED, AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.