IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-521

 No. COA20-464

 Filed 5 October 2021

 Office of Administrative Hearings, No. 17 OSP 08518

 JUDITH M. AYERS, Petitioner,

 v.

 CURRITUCK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.

 Appeal by Respondent from final decision entered 5 May 2020 by

 Administrative Law Judge Melissa Owens Lassiter in the Office of Administrative

 Hearings. Heard in the Court of Appeals 23 March 2021.

 Hornthal, Riley, Ellis, & Maland, L.L.P., by John D. Leidy, for petitioner-
 appellee.

 The Twiford Law Firm, P.C., by John S. Morrison, for respondent-appellant.

 MURPHY, Judge.

¶1 When a party challenges findings of fact and conclusions of law in an

 administrative law judge’s (“ALJ”) order reviewing discipline of a career State

 employee, we conduct a whole record test to determine whether substantial evidence

 supported the findings of fact and review the challenged conclusions of law de novo.

 When determining whether an agency had just cause for the disciplinary action taken

 against a career State employee, we must evaluate: (1) whether the employee engaged

 in the conduct the employer alleges; (2) whether the employee’s conduct qualifies as
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 unacceptable personal conduct under the North Carolina Administrative Code; and

 (3) whether that employee’s misconduct amounted to just cause for the disciplinary

 action taken. See Warren v. N.C. Dep’t. of Crime Control & Pub. Safety, 221 N.C.

 App. 376, 382-83, 726 S.E.2d 920, 925, disc. rev. denied, 366 N.C. 408, 735 S.E.2d 175

 (2012).

¶2 However, when the Record shows an agency failed to consider a necessary

 factor in determining appropriate disciplinary action to take against a career State

 employee, resulting in the agency’s failure to fully exercise its discretionary review

 under Wetherington v. N.C. Dep’t of Pub. Safety, the ALJ must remand to the agency

 for an investigation that considers each required factor. Without the agency’s full

 consideration of all factors, we cannot conduct an adequate de novo review on appeal.

 See Wetherington v. N.C. Dep’t of Pub. Safety, 368 N.C. 583, 592, 780 S.E.2d 543, 548

 (2015) (“Wetherington I”). Here, the agency failed to consider a required factor under

 Wetherington I–resulting harm from the career State employee’s unacceptable

 personal conduct–in its decision to terminate the career State employee, and the

 administrative law judge failed to remand this matter to the agency for a complete

 investigation and consideration of the required factor.

 BACKGROUND

¶3 Respondent-Appellant Currituck County Department of Social Services (“DSS”

 or “the agency”) brings its second appeal in this case. While facts from this case are
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 set out in the original appeal, Ayers v. Currituck Cty. Dep’t of Soc. Servs., 267 N.C.

 App. 513, 514-17, 833 S.E.2d 649, 651-53 (2019) (“Ayers I”), we include a recitation of

 “the facts and procedural history relevant to the issues currently before us.” Premier,

 Inc. v. Peterson, 255 N.C. App. 347, 348, 804 S.E.2d 599, 601 (2017).

 A. Prior to Incident

¶4 Petitioner-Appellee Judith Ayers had been employed with DSS from 2007 until

 the incident in 2017. Ayers was the supervisor for the Child Protective Services Unit

 at DSS who reported directly to the DSS Director. Neither party contests that Ayers

 was a career State employee.1

¶5 Ayers consistently received positive work performance reviews and had never

 been disciplined as a DSS employee before the incident occurred. Until 30 June 2017,

 her boss was the DSS Director, Kathy Romm, who had hired Ayers; Romm had asked

 Ayers whether she wanted to take her position upon Romm’s retirement. Ayers

 declined to pursue the position, and Romm hired another DSS employee, Samantha

 Hurd. Both Ayers and Hurd are Caucasian women.

 1 “Career State employee” is a term of art defined in N.C.G.S. § 126-1.1 as follows:

 “‘[C]areer State employee’ means a State employee or an employee of a local entity who is
 covered by this Chapter pursuant to [N.C.G.S. §] 126-5(a)(2) who: (1) Is in a permanent
 position with a permanent appointment, and (2) Has been continuously employed by the
 State of North Carolina or a local entity as provided in [N.C.G.S. §] 126-5(a)(2) in a position
 subject to the North Carolina Human Resources Act for the immediate 12 preceding months.”
 N.C.G.S. § 126-1.1(a) (2019). At the time of the incident and subsequent termination, Ayers
 was a career State employee.
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

¶6 Prior to Hurd’s promotion, she supervised DSS’s Foster Care Unit, and she and

 Ayers had a history of disagreements and conflict in their roles. The disagreements

 and conflict continued after Hurd’s promotion.

 B. Incident

¶7 On 3 November 2017, Hurd asked Ayers about a racial demarcation–“NR”–

 that a social worker had included on a client intake form; Hurd did not recognize the

 demarcation, asked Ayers what it stood for multiple times, and Ayers responded with

 a racial epithet. Ayers claimed she said “nigra rican,” while Hurd claimed Ayers said

 “[n-----] rican” (“the N word”). According to testimony from Hurd and Ayers, Ayers

 initially laughed about the comment, but became apologetic and embarrassed soon

 afterward. After investigation, Hurd and Ayers discovered the client referred to on

 the form was Caucasian.

 C. Disciplinary Action

¶8 The incident occurred on Friday, 3 November 2017, and Hurd conferred with

 DSS’s counsel over the following weekend. After receiving guidance, Hurd applied a

 twelve-factor test, derived from a guide for North Carolina public employers

 published by the University of North Carolina at Chapel Hill Institute of

 Government, to Ayers’s comment and instituted disciplinary proceedings against her
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

on Monday, 6 November 2017. The twelve-factor test2 included the following

considerations:

 1. The nature and the seriousness of the offense and its
 relation to the employee’s duties, position, and
 responsibilities, including whether the offense was
 intentional or technical or inadvertent, was committed
 maliciously or for gain, or was frequently repeated.

 2. The employee’s job level and type of employment,
 including supervisory or fiduciary role, contacts with the
 public, and prominence of the position.

 3. The employee’s past disciplinary record.

 4. The employee’s past work record, including length of
 service, performance on the job, ability to get along with
 fellow workers and dependability.

 5. The effect of the offense upon the employee’s ability to
 perform at a satisfactory level and its effect upon [the]
 supervisor’s confidence in the employee’s ability to perform
 assigned duties.

 6. The consistency of the penalty with those imposed[] upon
 other employees for the same or similar offenses.

 7. The impact of the penalty upon the reputation of the
 agency[.]

 8. The notoriety of the offense or its impact upon the
 reputation of the agency.

 9. The clarity with which the employee was aware of any
 rules that were violated in committing the offense or had

 2 Hurd obtained this twelve-factor test from the third edition of Employment Law: A

Guide for North Carolina Public Employers, by Stephen Allred. See Stephen Allred,
Employment Law: A Guide for North Carolina Public Employers (3d ed. 1999).
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 been warned about the conduct in question.

 10. The potential for the employee’s rehabilitation.

 11. The presence of mitigating circumstances surrounding
 the offense such as unusual job tension; personality
 problems[;] mental impairment; harassment; or bad faith,
 malice or provocation on the part of others involved in the
 matter.

 12. The adequacy and the effectiveness of alternative
 sanctions to deter such conduct in the future by the
 employee or others.

¶9 After meeting with Ayers, Hurd placed her on investigatory status with pay,

 and subsequently terminated her employment with DSS; Ayers appealed, and Hurd

 affirmed her decision. Ayers filed a Petition for a Contested Case Hearing with the

 Office of Administrative Hearings.

 D. 13 June 2018 ALJ Decision

¶ 10 An ALJ held a contested case hearing on 19 April 2018 and reversed Hurd’s

 termination decision in a Final Decision filed 13 June 2018 (“First ALJ Order”).

 Findings of Fact 23 and 47 in the First ALJ Order described Ayers’s and Hurd’s

 different recollections of the word Ayers used, but the First ALJ Order also included

 the word “negra-rican,” which was a third variation of the word. A fourth variation,

 “negro-rican,” appeared in Conclusion of Law 13. The ALJ applied the three-prong

 test from Warren, determined the first prong of “whether the employee engaged in

 the conduct the employer alleges[,]” was not met in light of the disagreements on
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 verbiage, and reversed Hurd’s termination of Ayers. See Warren, 221 N.C. App. at

 382-83, 726 S.E.2d at 925. DSS appealed the First ALJ Order.

 E. Ayers I

¶ 11 In an opinion filed 1 October 2019, we vacated and remanded the First ALJ

 Order. Ayers I, 267 N.C. App. at 513, 833 S.E.2d at 649. We noted Finding of Fact

 23 from the First ALJ Order, which included a third and incorrect variation of the

 word used when describing the disagreement on epithet verbiage between Ayers and

 Hurd, was the “critical finding driving the ALJ’s analysis” in its reversal of Hurd’s

 termination decision. Id. at 523, 833 S.E.2d at 656. We found,

 the ALJ’s [f]inding is not supported by the evidence in the
 Record[, particularly Ayers’s own testimony]. It is then
 apparent the ALJ carried out the remainder of its analysis
 under the misapprehension of the exact phrase used and
 that the ALJ’s understanding of the exact phrase used was
 central to both the rest of the ALJ’s [f]indings and its
 [c]onclusions of [l]aw. Therefore, we vacate the [First ALJ
 Order] in its entirety and remand this matter for the ALJ
 to reconsider its factual findings in light of the evidence of
 record and to make new conclusions based upon those
 factual findings.

 Id. at 524, 833 S.E.2d at 656-57. In addition to noting “the ALJ’s conclusions and

 considerations of the ‘totality of the circumstances’ were also grounded in its

 misapprehension of the evidentiary record[,]” we held either “‘n----- rican’ or the

 variant ‘nigra rican’” “constitute[d] a racial epithet[,]” and DSS “met its initial burden

 of proving [Ayers] engaged in the conduct alleged under Warren.” Id. at 525-26, 833
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 S.E.2d at 657-58. In vacating the First ALJ Order, we instructed the ALJ to “make

 new findings of fact supported by the evidence in the record and continue its analysis

 under Warren of whether [Ayers] engaged in unacceptable conduct constituting just

 cause for her dismissal or for the imposition of other discipline.” Id. at 526-27, 833

 S.E.2d at 658.3

 F. ALJ Decision on Remand

¶ 12 On remand, the ALJ entered its Final Decision on Remand (“Second ALJ

 Order”) on 5 May 2020, made additional findings of fact and conclusions of law,

 applied the three-prong Warren test, and reversed DSS’s termination of Ayers. The

 ALJ decided the first two prongs of the Warren test–Ayers engaging in the conduct

 alleged and the conduct constituting unacceptable personal conduct–were met.

 Ayers, as the appellee, does not contest that decision. However, the ALJ concluded

 the third prong of the Warren test–whether DSS had just cause for the disciplinary

 action taken under N.C.G.S. § 126-35(a)–was not met. See Warren, 221 N.C. App. at

 383, 726 S.E.2d at 925. In concluding a lesser disciplinary measure was warranted,

 3 In our review of the First ALJ Order in Ayers I, we reversed “the ALJ’s conclusion

 that DSS ‘failed to prove the first prong of Warren[,]’” and further held, “on remand, the ALJ
 should make new findings of fact supported by the evidence in the record and continue its
 analysis under Warren of whether [Ayers] engaged in unacceptable conduct constituting just
 cause for her dismissal or for the imposition of other discipline.” Ayers I, 267 N.C. App. at
 526-27, 833 S.E.2d at 658. As such, Ayers I did not reach the third prong of the Warren test–
 whether that employee’s misconduct amounted to just cause for the disciplinary action taken.
 Warren, 221 N.C. App. at 383, 726 S.E.2d at 925. Here, the third prong of the Warren test is
 at issue for the first time.
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 the Second ALJ Order focused on: Ayers’s “ten-year employment history with no prior

 disciplinary actions” and high performance reviews; that Hurd “did not think it was

 significant whether anyone heard [Ayers’s] comment”; the lack of evidence that this

 one-time comment was harassment of a specific individual or caused actual harm to

 DSS, until DSS revealed the incident to others; and that DSS’s decision “was

 influenced by . . . past philosophical differences [between Hurd and Ayers] and their

 past history.” However, the Second ALJ Order also found that “[DSS] did not consider

 if [Ayers’s] . . . comment caused any actual harm to the agency’s reputation. [DSS]

 only considered potential harm to the agency.” The Second ALJ Order also

 acknowledged the lack of resolution regarding whether anyone other than Hurd

 heard Ayers’s epithet, which the ALJ deemed a “necessary consideration.” Despite

 the lack of resolution of the resulting harm factor from Wetherington I, the Second

 ALJ Order retroactively reinstated Ayers with a two-week suspension without pay,

 ordered back pay, and ordered reimbursement of Ayers’s attorney fees. See

 Wetherington I, 368 N.C. at 592, 780 S.E.2d at 548.

¶ 13 DSS appeals the Second ALJ Order and presents the following three

 arguments: (A) “the ALJ made findings of fact not supported by substantial evidence”

 in its Second ALJ Order; (B) specific conclusions of law from the Second ALJ Order

 are erroneous; and, (C) DSS “had just cause to dismiss [Ayers].” After analyzing the

 nature of ALJ and appellate court review of an agency’s disciplinary decision
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 regarding a career State employee, including standards of review, we determine that

 our appellate review cannot meaningfully be conducted in light of DSS’s investigation

 and the Second ALJ Order.

 ANALYSIS

 A. ALJ Review of Career State Employee Discipline

¶ 14 A career State employee may be disciplined for two reasons: unsatisfactory job

 performance (“UJP”) or unacceptable personal conduct (“UPC”). See 25 N.C.A.C.

 1J.0604(b) (2019). Under the North Carolina Administrative Code, just cause for the

 written warning, dismissal, suspension, or demotion of a career State employee may

 be established only on a showing of UPC or UJP, “including grossly inefficient job

 performance.” 25 N.C.A.C. 1J.0604(a)-(b) (2019). Here, UJP is not the proffered

 reason for DSS’s discipline of Ayers; instead, UPC is at issue.

¶ 15 UPC includes, inter alia, the following examples, which DSS accused Hurd of

 committing:

 (a) conduct for which no reasonable person should expect
 to receive prior warning;

 ...

 (d) the willful violation of known or written work rules;

 (e) conduct unbecoming a [S]tate employee that is
 detrimental to [S]tate service . . . .

 25 N.C.A.C. 1J.0614(8)(a), (d), (e) (2019); see Ayers I, 267 N.C. App. at 521-22, 833
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 S.E.2d at 655. Where a career State employee has committed UJP or UPC, “[t]he

 North Carolina Administrative Code sets forth four disciplinary alternatives, which

 may be imposed against an employee upon a finding of just cause: ‘(1) [W]ritten

 warning; (2) Disciplinary suspension without pay; (3) Demotion; and (4) Dismissal.’”

 Harris v. N.C. Dep’t of Pub. Safety, 252 N.C. App. 94, 108, 798 S.E.2d 127, 137

 (quoting 25 N.C.A.C. 1J.0604(a) (2017)), aff’d per curiam, 370 N.C. 386, 808 S.E.2d

 142 (2017).

¶ 16 An ALJ has authority to impose discipline that is different from what the

 agency originally decided, as long as that discipline is approved under the North

 Carolina Administrative Code and just cause did not exist for the discipline imposed

 by the agency.

 An ALJ, reviewing an agency’s decision to discipline a
 career State employee within the context of a contested
 case hearing, owes no deference to the agency’s conclusion
 of law that . . . just cause existed . . . [for] the agency’s
 action. . . . [W]hether just cause exists is a conclusion of
 law, which the ALJ had authority to review de novo.

 ....

 Because the ALJ hears the evidence, determines the
 weight and credibility of the evidence, makes findings of
 fact, and balances the equities, the ALJ has the authority
 under de novo review to impose an alternative discipline.
 Upon the ALJ’s determination that the agency met the first
 two prongs of the Warren standard, but just cause does not
 exist for the particular disciplinary alternative imposed by
 the agency, the ALJ may impose an alternative sanction
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 within the range of allowed dispositions.

 Harris, 252 N.C. App. at 102, 109, 798 S.E.2d at 134, 138 (marks and citations

 omitted).

¶ 17 In conducting its de novo review of the agency’s disciplinary investigation and

 determination, an ALJ reviews, inter alia, whether the agency, in the agency’s

 discretionary review of whether to discipline a career State employee, considered the

 following required factors:

 [T]he severity of the violation, the subject matter involved,
 the resulting harm, the [career State employee’s] work
 history, or discipline imposed in other cases involving
 similar violations. . . . [C]onsideration of these factors is an
 appropriate and necessary component of a decision to
 impose discipline upon a career State employee for [UPC].

 Wetherington I, 368 N.C. at 592, 780 S.E.2d at 548 (emphasis added).

 B. Appellate Court Just Cause Review

¶ 18 “It is well settled that in cases appealed from administrative tribunals,

 questions of law receive de novo review, whereas fact-intensive issues such as

 sufficiency of the evidence to support an agency’s decision are reviewed under the

 whole-record test.” N.C. Dep’t of Env’t & Nat. Res. v. Carroll, 358 N.C. 649, 659, 599

 S.E.2d 888, 894 (2004) (marks omitted). “An appellate court’s standard of review of

 an agency’s final decision–and now, an administrative law judge’s final decision–has

 been, and remains, whole record on the findings of fact and de novo on the conclusions
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 of law.” Harris, 252 N.C. App. at 102, 798 S.E.2d at 134.

¶ 19 Accordingly, “[d]etermining whether a public employer had just cause to

 discipline its employee requires two separate inquiries: first, whether the employee

 engaged in the conduct the employer alleges, and second, whether that conduct

 constitutes just cause for the disciplinary action taken.” Carroll, 358 N.C. at 665, 599

 S.E.2d at 898 (emphasis added) (marks omitted). “The first half of the inquiry,

 Carroll instructs us, is a question of fact to be examined under the whole record test.

 The second half, by contrast, is a question of law to be examined de novo.” Early v.

 Cty. of Durham Dep’t of Soc. Servs., 172 N.C. App. 344, 360, 616 S.E.2d 553, 564

 (2005) (citing Carroll, 358 N.C. at 665-66, 599 S.E.2d at 898), disc. rev. improvidently

 allowed, 361 N.C. 113, 637 S.E.2d 539 (2006).

¶ 20 While the application of the whole record test to questions of fact is important,

 the fundamental question in a case brought under N.C.G.S.
 § 126-35 is whether the disciplinary action taken was just.
 Inevitably, this inquiry requires an irreducible act of
 judgment that cannot always be satisfied by the
 mechanical application of rules and regulations. Just
 cause is a flexible concept, embodying notions of equity and
 fairness, that can only be determined upon an examination
 of the facts and circumstances of each individual case.

 Wetherington I, 368 N.C. at 591, 780 S.E.2d at 547 (marks and citation omitted); see

 N.C.G.S. § 126-35(a) (2019) (“No career State employee subject to the North Carolina

 Human Resources Act shall be discharged, suspended, or demoted for disciplinary
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 reasons, except for just cause.”). “Whether conduct constitutes just cause for the

 disciplinary action taken is a question of law we review de novo.” Warren, 221 N.C.

 App. at 378, 726 S.E.2d at 923.

¶ 21 Warren summarized this precedent as follows:

 Just cause, like justice itself, is not susceptible of precise
 definition. It is a flexible concept, embodying notions of
 equity and fairness, that can only be determined upon an
 examination of the facts and circumstances of each
 individual case. Thus, not every violation of law gives rise
 to just cause for employee discipline.

 ....

 We conclude that the best way to accommodate the
 Supreme Court’s flexibility and fairness requirements for
 just cause is to balance the equities after the unacceptable
 personal conduct analysis. This avoids contorting the
 language of the Administrative Code defining unacceptable
 personal conduct.[] The proper analytical approach is to
 first determine whether the employee engaged in the
 conduct the employer alleges. The second inquiry is
 whether the employee’s conduct falls within one of the
 categories of unacceptable personal conduct provided by
 the Administrative Code. Unacceptable personal conduct
 does not necessarily establish just cause for all types of
 discipline. If the employee’s act qualifies as a type of
 unacceptable conduct, the tribunal proceeds to the third
 inquiry: whether that misconduct amounted to just cause
 for the disciplinary action taken. Just cause must be
 determined based upon an examination of the facts and
 circumstances of each individual case.

 Id. at 381, 382-83, 726 S.E.2d at 924, 925 (emphases added) (marks and footnote

 omitted).
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 C. Meaningful Appellate Review

¶ 22 Here, the first two prongs under Warren–whether Ayers engaged in the

 conduct the agency alleges and whether that conduct falls within disciplinable UPC–

 were met. Whether just cause existed for DSS to terminate Ayers’s employment is

 the subject of this appeal, which we review de novo. Id. at 378, 726 S.E.2d at 923.

¶ 23 However, the ALJ found DSS did not consider one of the required factors under

 Wetherington I–the resulting harm from Ayers’s UPC. See Wetherington I, 368 N.C.

 at 592, 780 S.E.2d at 548. In challenging the Second ALJ Order, DSS does not

 address the Wetherington I factors, but instead emphasizes that Hurd appropriately

 used her discretion in making the disciplinary decision after thoroughly conducting

 the twelve-factor analysis from Stephen Allred’s UNC School of Government

 publication Employment Law: A Guide for North Carolina Public Employers. See

 Stephen Allred, Employment Law: A Guide for North Carolina Public Employers (3d

 ed. 1999). The factors Hurd considered are listed in Finding of Fact 69, and do not

 include “resulting harm.” See Wetherington I, 368 N.C. at 592, 780 S.E.2d at 548

 (requiring consideration of the “resulting harm” from the career State employee’s

 violation). DSS relies on our interpretation of Wetherington I in Wetherington v. N.C.

 Dep’t of Pub. Safety, 270 N.C. App. 161, 840 S.E.2d 812 (“Wetherington II”), disc. rev.

 denied, 374 N.C. 746, 842 S.E.2d 585 (2020), to emphasize Hurd’s discretion in

 making the decision to discipline Ayers. In Wetherington II, we stated: “Although the
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 primary holding in [Wetherington I] was that public agency decision-makers must use

 discretion in determining what disciplinary action to impose in situations involving

 alleged unacceptable personal conduct, the Court did identify factors that are

 appropriate and necessary components of that discretionary exercise.” Wetherington

 II, 270 N.C. App. at 190, 840 S.E.2d at 832 (quoting Brewington v. N.C. Dep’t of Pub.

 Safety, 254 N.C. App. 1, 25, 802 S.E.2d 115, 131 (2017), disc. rev. denied, 371 N.C.

 343, 813 S.E.2d 857 (2018)). DSS emphasizes our inclusion of “must use discretion”

 and “discretionary exercise” in the above quote and claims Hurd properly exercised

 her discretion through consideration of the factors, “all facts and circumstances, [and]

 different available punishments[.]”

¶ 24 However, Wetherington I, and our reasoning in Wetherington II, exemplify that

 DSS did not properly exercise its discretion in its disciplinary investigation of Ayers.

 In Wetherington II, we characterized the Wetherington I factors–severity of the

 violation, subject matter involved, resulting harm, work history, and discipline

 imposed in other similar cases–as “appropriate and necessary components” for

 consideration when an agency makes a disciplinary decision regarding a career State

 employee. Id. Additionally, we emphasized the “[r]espondent was directed to

 consider all of these factors, at least to the extent there was any evidence to support

 them. [The] [r]espondent could not rely on one factor while ignoring the others.” Id.

 (emphasis added); see also Wetherington I, 368 N.C. at 592, 780 S.E.2d at 548. Similar
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 to the respondent in Wetherington II, DSS was required to consider all of the factors

 from Wetherington I. However, the ALJ found that Hurd, as DSS’s representative in

 the disciplinary decision regarding Ayers, did not consider the necessary resulting

 harm factor, and thus did not consider all of the required factors.4

¶ 25 The ALJ’s Findings of Fact 71 and 74–that DSS did not consider the required

 factor of resulting harm–are also supported by substantial evidence in the Record.5

 See Harris, 252 N.C. App. at 107, 798 S.E.2d at 137 (marks omitted) (“We afford a

 high degree of deference to the ALJ’s findings, when they are supported by

 substantial evidence in the record.”). DSS did not consider whether there was any

 harm to DSS in its consideration of discipline for Ayers, despite the detailed nature

 of Hurd’s investigation. Instead, Hurd’s testimony revealed she considered the

 potential for harm to the reputation of, and workers at, DSS and acknowledged the

 lack of evidence that anyone other than her heard Ayers’s epithet. On cross-

 examination, Hurd testified:

 [AYERS’S COUNSEL:] You’re talking about [considering]
 the potential for harm, right?

 [HURD:] Yes, sir.

 [AYERS’S COUNSEL:] But I’m asking whether you
 considered whether there was any actual harm resulting

 4 Hurd admitted to her lack of investigation and consideration of the resulting harm

 to DSS from Ayers’s UPC in the disciplinary decision.
 5 On appeal, DSS challenges Findings of Fact 33, 39, 50, 55, 60, 67, 71, 74, 76, 77, and

 82 as not supported by substantial evidence.
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 from her statement?

 [HURD:] Well, I don’t know. I guess it depends on how it
 could be defined. She called the -- she referred to the
 children in the F family as [the N word] rican, and I heard
 it. I thought that was extremely offensive and
 inflammatory.

 [AYERS’S COUNSEL:] But you have no evidence that they
 were harmed in any way by her statement, right?

 [HURD:] Well, not that I know of.

 Substantial evidence supports the ALJ’s determination that Hurd, and DSS, did not

 consider a required factor under Wetherington I.

¶ 26 In Wetherington I, when our Supreme Court determined the employing agency

 did not conduct its discretionary disciplinary review appropriately, it remanded to

 the employing agency for a disciplinary review that employed, inter alia, the

 consideration of the factors required. Wetherington I, 368 N.C. at 593, 780 S.E.2d at

 548. Under Wetherington I, the ALJ and subsequently reviewing courts are tasked

 with conducting de novo review of DSS’s disciplinary decision, relying on

 corresponding findings of fact from the ALJ regarding whether just cause existed to

 terminate Ayers; DSS’s disciplinary investigation must be complete for proper,

 subsequent review of that decision to occur.

¶ 27 As a result of DSS’s incomplete investigation, a remand was necessary for a

 completion of that investigation, and we cannot conduct meaningful de novo appellate

 review regarding whether just cause existed to terminate Ayers. See Mills v. N.C.
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 Dep’t of Health & Human Servs., 251 N.C. App. 182, 193-95, 794 S.E.2d 566, 573-74

 (2016) (noting “inadequacies in the ALJ’s analysis frustrate meaningful [appellate]

 review”). DSS’s failure to consider the resulting harm to the agency from Ayers’s

 UPC was a failure to fully exercise its discretionary review under Wetherington I.

 The incomplete nature of DSS’s investigation, as well as the ALJ’s de novo review of

 DSS’s disciplinary decision, is demonstrated by Conclusion of Law 24 from the Second

 ALJ Order, which stated “Hurd admitted that she did not think it was significant

 whether anyone heard [Ayers’s] comment on [3 November 2017]. However, whether

 anyone else heard such statement was a necessary consideration in weighing the

 evidence to determine the severity of the conduct and whether just cause existed to

 terminate [Ayers].” (Emphases added). DSS did not make such a necessary

 consideration in its disciplinary investigation, rendering the investigation incomplete

 and the ALJ’s findings regarding whether such harm occurred too speculative. For

 us to conduct meaningful appellate review regarding just cause for disciplinary

 action, the ALJ must make complete findings of fact regarding the harm to DSS

 resulting from Ayers’s UPC, including whether any occurred. See Wetherington I, 368

 N.C. at 593, 780 S.E.2d at 548. The ALJ can only make such findings if DSS conducts

 a complete investigation under Wetherington I.

¶ 28 Similar to our Supreme Court’s mandate in Wetherington I, we must remand

 to the ALJ with instructions to remand to DSS to conduct a complete, discretionary
 AYERS V. CURRITUCK CTY. DEP’T OF SOC. SERVS.

 2021-NCCOA-521

 Opinion of the Court

 review regarding Ayers’s UPC and corresponding disciplinary action.

 CONCLUSION

¶ 29 From a review of the Record and Transcript, DSS did not consider the

 necessary factor of resulting harm in her determination regarding whether and how

 to discipline Ayers. The ALJ’s determination in the Second ALJ Order that DSS’s

 investigation into Ayers’s conduct was incomplete comports with Wetherington I and

 II. Under Wetherington I, the appropriate remedy was to remand this matter to DSS

 with instructions to conduct a complete disciplinary investigation regarding Ayers’s

 UPC. We remand to the ALJ with instructions to remand this matter to DSS for

 additional proceedings not inconsistent with this opinion.

 REMANDED.

 Judge DIETZ concurs.

 Judge GORE concurs with separate opinion.
 No. COA20-464 – Ayers v. Currituck Cty. Dep’t of Soc. Servs.

 GORE, Judge, concurring.

¶ 30 I concur with the majority in its legal reasoning. However, I must draw

 attention to the concern I have for our current law to require a resulting harm in an

 employee and agency dispute that is charged with the unwavering responsibility of

 protecting children in North Carolina. Social workers employed by County

 Department of Social Services (“DSS”) are on the front line of the battle against harm

 that might come to our children. The facts of this case are concerning.

¶ 31 I am troubled that our law requires a resulting harm that involves employees

 charged with protecting children. I know this standard is balanced against the rights

 afforded to state employees. However, I analyze that standard against the fact that

 the same state employees are responsible for substantiating facts related to the actual

 harm or risk of harm to children within areas of DSS care. It is arguable that a proven

 resulting harm to the agency might not directly affect a child in DSS care. In contrast,

 it can be put forth that anything negatively affecting DSS ultimately hurts a child in

 its care. It is this Court’s responsibility to thoroughly analyze the law as it is and its

 results.

¶ 32 I want to make sure that it is discussed that conduct by state employees have

 varying degrees of resulting harm. A DSS employee’s conduct that creates a resulting

 harm or even conduct that presents a risk of harm should not be taken lightly. Our

 child protective system works to prevent harm upon one of our most precious

 resources, our children, and the law should be equally vigilant. I hereafter concur.