ZACHARY, Judge.
 

 *939
 
 Respondent East Carolina University appeals from a Final Decision of the North Carolina Office of Administrative Hearings, which concluded that respondent did not have just cause to dismiss petitioner Ralph Whitehurst from his position as a police sergeant at East Carolina University. After careful review, we affirm the decision of the administrative law judge.
 

 *629
 

 Factual and Procedural Background
 

 Petitioner-appellee Ralph Whitehurst was initially employed by the East Carolina University ("ECU") Police Department in April 2004 as a Master Police Officer. ECU promoted Whitehurst to Public Safety Supervisor in June 2006. Whitehurst was a permanent State employee subject to the North Carolina Human Resources Act, Chapter 126 of the North Carolina General Statutes.
 

 On the evening of 17 March 2016, Whitehurst responded to a dispatch call reporting an assault on the ECU campus. Whitehurst's actions on the scene resulted in negative media coverage, and ECU administration began taking steps to dismiss Whitehurst from employment.
 

 On 21 July 2016, ECU Chancellor Cecil Staton issued ECU's Final University Decision dismissing Whitehurst from employment. Whitehurst filed a petition for a contested case hearing with the Office of Administrative Hearings on 28 July 2016. On 22 February 2017, Administrative Law Judge Donald J. Overby ("ALJ") issued a Final Decision reversing Whitehurst's dismissal, ordering instead that he be demoted.
 

 At issue on appeal is ECU's decision to dismiss Whitehurst based on his response to the 17 March 2016 assault. The unchallenged details of the incident are as follows.
 

 On the night of 17 March 2016, non-ECU student Patrick Myrick "hit a girl in the face" at a bar in downtown Greenville. This prompted a group of individuals to pursue Myrick. The group of individuals chased Myrick onto ECU's campus and began attacking him. Meanwhile, an ECU telecommunicator saw the attack on Myrick on the University's surveillance cameras and alerted the ECU police. Whitehurst responded to the scene and was the first officer to arrive.
 

 *940
 
 The surveillance footage shows that the attack on Myrick had ended by the time Whitehurst appeared. When Whitehurst arrived, the scene was relatively calm and the group of individuals was detaining Myrick by sitting on top of him. Whitehurst had not been informed of the details of the attack, but knew only that he was responding to "an assault" on campus.
 

 When Whitehurst approached the group, most of the individuals began to leave, and it does not appear from the surveillance video that Whitehurst made an attempt to detain them. The individuals who remained on the scene told Whitehurst that Myrick "had assaulted a girl downtown, punched her in the face." Whitehurst asked Myrick what happened and Myrick told him that he "had been in a fight downtown." Whitehurst secured Myrick by placing handcuffs on him; however, he did not attempt to prevent the remaining individuals from leaving the scene, nor did he ask them to stay so that he could obtain a statement. Whitehurst noticed blood on Myrick's face and contacted emergency rescue.
 

 Other officers began to arrive several minutes later. By that point, almost all of the perpetrators and witnesses of the assault on Myrick had left the scene. Whitehurst directed Officer Chuck Wills "to make sure to get the individuals on scene information." In the surveillance footage, Officer Tarkington is seen talking on her cell phone to a dispatcher, who informed her that Myrick had been the victim of an assault. However, Officer Tarkington did not convey this fact to Whitehurst. Whitehurst contends that he did not hear any of the radio calls about Myrick being assaulted. Myrick was brought to the hospital and no further action was taken.
 

 That same morning, around 3:30 a.m., Whitehurst notified Chief Gerald Lewis and other command officers that he had responded to an assault on campus. Chief Lewis viewed the surveillance footage of the incident. Sgt. Jermaine Cherry informed Chief Lewis that Whitehurst had not filed a report with respect to the assault. Chief Lewis was concerned that no official reports were filed and that Whitehurst had not detained anyone at the scene in order to gather information from them. On 18 March 2016, Chief Lewis initiated an Internal Affairs investigation. Whitehurst viewed the surveillance footage for the first time when he met with Chief Lewis on 21 March 2016. Chief Lewis informed Whitehurst that he was being placed on an Investigatory Placement with Pay status effective that day.
 

 *630
 
 The Internal Affairs Investigation Report concluded that Whitehurst's response to the assault violated three written work rules. The Report found that Whitehurst violated General Order 1400-01 when he failed to obtain information from the witnesses and suspects.
 

 *941
 
 The Report also found that Whitehurst violated General Order 500-02 (Field Reporting and Management) because he failed to ensure that the appropriate report was filed in order to document the incident. Lastly, the Report concluded that by failing to document the incident, Whitehurst violated General Order 1100-01 (Criminal Arrest Policy and Procedure), which requires documentation by a responding officer when a private citizen detains someone. Whitehurst was notified that a pre-disciplinary conference would be held on 18 April 2016, and that his dismissal was being recommended.
 

 Whitehurst's pre-disciplinary conference was conducted by Chief Lewis and Sara Lilley of the ECU Human Resources Department on 18 April 2016. Despite Whitehurst's responses to the allegations against him, Chief Lewis and Lilley concluded that Whitehurst engaged in unacceptable personal conduct for which no reasonable person should expect to receive a prior warning. This conclusion was based on Whitehurst's failure to properly investigate and document the incident, both of which constitute willful violations of the General Orders, the department's written work rules. Whitehurst was notified by letter of his dismissal for unacceptable personal conduct on 19 April 2016.
 

 Whitehurst properly followed the ECU grievance procedure. On 29 June 2016, a grievance hearing was held before a three-member panel at ECU to consider Whitehurst's dismissal. The Grievance Hearing Panel recommended to the Chancellor that Whitehurst be demoted, rather than dismissed. On 21 July 2016, ECU Chancellor Staton issued a Final University Decision upholding Chief Lewis's dismissal of Whitehurst from employment for unacceptable personal conduct.
 

 Whitehurst filed a petition for a contested case hearing with the Office of Administrative Hearings on 27 July 2016. On 22 February 2017, Administrative Law Judge Donald J. Overby issued a Final Decision. The ALJ determined that ECU "met its burden of proof, by the preponderance of the evidence, that [Whitehurst's] actions on the night of March 17, 2016, constitute unacceptable personal conduct, [and] that [just] cause exists for disciplining [Whitehurst.]" However, the ALJ reversed ECU's decision to dismiss Whitehurst, and concluded that:
 

 taking into account all of the facts and circumstances in this case, ... dismissal was not the appropriate discipline[.] Having considered all the evidence presented, [Whitehurst's] work and discipline history, the fact that he has not previously been discipline[d] and all relevant factors, the appropriate punishment for [Whitehurst] is demotion.
 

 *942
 
 The ALJ ordered that Whitehurst be reinstated to his employment by ECU, "but demoted to a position one pay grade below the rank he held at the time of his separation." ECU timely filed Notice of Appeal to this Court from the ALJ's Final Decision pursuant to N.C. Gen. Stat. §§ 7A-29(a) and 126-34.02(a).
 

 Discussion
 

 On appeal, ECU argues that the ALJ erred in concluding as a matter of law that ECU did not have just cause to dismiss Whitehurst from employment. ECU also argues that the ALJ did not have the authority to order the alternative relief that Whitehurst be demoted. We conclude that ECU's arguments lack merit, and affirm the decision of the ALJ.
 

 I. Standard of Review
 

 The standard of review to be applied on appeal of an administrative tribunal's final decision depends upon the nature of the error asserted. "It is well settled that in cases appealed from administrative tribunals, questions of law receive
 
 de novo
 
 review, whereas fact-intensive issues such as sufficiency of the evidence to support [the] decision are reviewed under the whole-record test."
 
 N.C. Dep't. of Env't. & Natural Res. v. Carroll
 
 ,
 
 358 N.C. 649
 
 , 659,
 
 599 S.E.2d 888
 
 , 894 (2004) (citation, quotation marks, and alterations omitted). Section 150B-51 of our State's Administrative Procedure Act sets out in more
 
 *631
 
 detail the applicable scope and standards of review. That Section provides that
 

 (b) The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence ... in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 N.C. Gen. Stat. § 150B-51(b) (2016).
 

 *943
 
 Where the asserted error falls under subsections 150B-51(b)(5) and (6), we apply the "whole record standard of review." N.C. Gen. Stat. § 150B-51(c) (2016). Under the whole record standard of review, the reviewing "court must examine all the record evidence-that which detracts from the agency's findings and conclusions as well as that which tends to support them-to determine whether there is substantial evidence to justify the agency's decision."
 
 Harris v. N.C. Dep't of Pub. Safety
 
 , --- N.C.App. ----, ----,
 
 798 S.E.2d 127
 
 , 133,
 
 aff'd per curiam
 
 , --- N.C. ----,
 
 808 S.E.2d 142
 
 (2017 N.C. LEXIS *1020) (2017). "Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion."
 

 Id.
 

 However,
 

 "[t]he whole record test is not a tool of judicial intrusion; instead, it merely gives a reviewing court the capability to determine whether an administrative decision has a rational basis in the evidence." Therefore, the whole record test "does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views."
 

 Blackburn v. N.C. Dep't. of Pub. Safety
 
 , --- N.C.App. ----, ----,
 
 784 S.E.2d 509
 
 , 518 (2016) (quoting
 
 Carroll
 
 ,
 
 358 N.C. at 674
 
 ,
 
 599 S.E.2d at 903-04
 
 (internal quotation marks omitted) and
 
 Lackey v. Dep't of Human Res.
 
 ,
 
 306 N.C. 231
 
 , 238,
 
 293 S.E.2d 171
 
 , 176 (1982) ) (alteration omitted).
 

 We conduct a
 
 de novo
 
 review of an asserted error of law falling under subsections 150B-51(b)(1)-(4),
 
 supra
 
 . N.C. Gen. Stat. § 150B-51(c)(2016) ;
 
 Blackburn
 
 , --- N.C.App. at ----,
 
 784 S.E.2d at 518
 
 . "Where the petitioner alleges that the agency decision was based on error of law, the reviewing court must examine the record
 
 de novo
 
 , as though the issue had not yet been considered by the agency."
 
 Souther v. New River Area Mental Health Dev. Disabilities & Substance Abuse Program
 
 ,
 
 142 N.C.App. 1
 
 , 4,
 
 541 S.E.2d 750
 
 , 752 (2001) (internal quotation marks omitted). "Under a
 
 de novo
 
 review, the court considers the matter anew and freely substitutes its own judgment for that of the ALJ."
 
 Blackburn
 
 , --- N.C.App. at ----,
 
 784 S.E.2d at 518
 
 .
 

 The determination of "whether a public employer had just cause to discipline its employee requires two separate inquiries[.]"
 
 Carroll
 
 ,
 
 358 N.C. at 665
 
 ,
 
 599 S.E.2d at 898
 
 . The initial inquiry is "whether the employee engaged in the conduct the employer alleges[.]"
 

 Id.
 

 (quotation marks omitted). This is a question of fact, "reviewed under the whole record test."
 
 Id
 
 . After determining that the employee did engage in the conduct alleged, the second inquiry is "whether that conduct constitutes
 
 *944
 
 just cause for the disciplinary action taken."
 

 Id.
 

 (quotation marks omitted). "Whether conduct constitutes just cause for the disciplinary action taken is a question of law we review
 
 de novo
 
 ."
 
 Warren v. N.C. Dep't of Crime Control & Pub. Safety
 
 ,
 
 221 N.C.App. 376
 
 , 378,
 
 726 S.E.2d 920
 
 , 923 (2012) (citing
 
 Carroll
 
 ,
 
 358 N.C. at 666
 
 ,
 
 599 S.E.2d at
 
 898 ).
 

 II. ALJ's Findings of Fact
 

 The majority of the ALJ's findings of fact have not been challenged, and are thus binding on appeal.
 
 Blackburn
 
 , --- N.C.App. at ----,
 
 784 S.E.2d at
 
 519 (citing
 
 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991) ). ECU only argues that Findings of Fact Nos. 44, 55, and 57 are unsupported by substantial evidence. However, "after careful review of the record and the ALJ's
 
 *632
 
 order," we do not find it necessary to assess the evidentiary support for each of these findings in order to determine whether the ALJ correctly found that ECU did not have just cause to terminate Whitehurst's employment.
 

 Id.
 

 We will review the evidence supporting these findings to the extent that they become material to the ALJ's decision below.
 

 III. Just Cause
 

 The State Human Resources Act, Chapter 126 of the North Carolina General Statutes, creates "a constitutionally protected 'property' interest in the continued employment of career State employees."
 
 Peace v. Employment Sec. Comm'n.
 
 ,
 
 349 N.C. 315
 
 , 321,
 
 507 S.E.2d 272
 
 , 277 (1998). Pursuant to
 
 N.C. Gen. Stat. § 126-35
 
 (a) (2016), "[n]o career State employee subject to the North Carolina Human Resources Act shall be discharged, suspended, or demoted for disciplinary reasons, except for just cause." If a career State employee believes that he was discharged, suspended, or demoted without just cause, he "may file a contested case in the Office of Administrative Hearings under Article 3 of Chapter 150B of the General Statutes."
 
 N.C. Gen. Stat. § 126-34.02
 
 (a) (2016). The Office of Administrative Hearings must then determine whether just cause existed for the employee's dismissal, demotion, or suspension.
 
 N.C. Gen. Stat. § 126-34.02
 
 (b)(3) (2016). "[T]he burden of showing that a career State employee was discharged ... for just cause rests with the employer."
 
 N.C. Gen. Stat. § 126-34.02
 
 (d) (2016).
 

 Only two grounds may constitute just cause for disciplinary action, including dismissal, pursuant to 25 N.C.A.C. 1I.2301(c) : (1) unsatisfactory job performance, including grossly inefficient job performance, and (2) unacceptable personal conduct. 25 N.C.A.C. 1I.2301(c) (2016). "Unacceptable personal conduct" includes, among other things, "conduct for which no reasonable person should expect to receive prior
 
 *945
 
 warning" and "the willful violation of known or written work rules[.]" 25 N.C.A.C. 1J.0614(8)(a) and (d) (2016). One instance of unacceptable personal conduct may constitute just cause for dismissal, and an employee may be dismissed without any prior warning or disciplinary action. 25 N.C.A.C. 1J.0608(a) (2016) ;
 
 Hilliard v. North Carolina Dep't of Corr.
 
 ,
 
 173 N.C.App. 594
 
 , 597,
 
 620 S.E.2d 14
 
 , 17 (2005).
 

 However, while "just cause" is defined to include "unacceptable personal conduct," "the fundamental question in a case brought under N.C.G.S. § 126-35 is whether the disciplinary action taken was 'just.' "
 
 Carroll
 
 ,
 
 358 N.C. at 669
 
 ,
 
 599 S.E.2d at 900
 
 .
 

 The proper analytical approach is to first determine whether the employee engaged in the conduct the employer alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. ... If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken.
 

 Warren
 
 ,
 
 221 N.C.App. at 383
 
 ,
 
 726 S.E.2d at 925
 
 . Accordingly, not every instance of unacceptable personal conduct will "give[ ] rise to 'just cause' for employee discipline."
 
 Carroll
 
 ,
 
 358 N.C. at 669
 
 ,
 
 599 S.E.2d at 901
 
 . Rather, "just cause" "is a flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case."
 
 Id.
 
 at 669,
 
 599 S.E.2d at 900
 
 (internal quotation marks and citations omitted).
 

 In determining whether unacceptable personal conduct constitutes just cause for dismissal under
 
 Warren's
 
 third inquiry, we look to several factors that were set forth in
 
 Wetherington v. N.C. Dep't of Public Safety
 
 ,
 
 368 N.C. 583
 
 ,
 
 780 S.E.2d 543
 
 (2015). Those factors include "the severity of the violation, the subject matter involved, the resulting harm, the [employee's] work history, or discipline imposed in other cases involving similar violations."
 

 Id.
 

 at 592
 
 ,
 
 780 S.E.2d at 548
 
 .
 

 In the instant case, the ALJ concluded that, under the first step of the
 
 Warren
 
 analysis, Whitehurst failed (1) to submit a non-criminal information report, and (2) to properly investigate the on-campus assault. Under the second prong-whether Whitehurst's actions constituted unacceptable personal conduct-the ALJ concluded that Whitehurst's
 
 *633
 
 conduct at the scene constituted unacceptable personal conduct, but that his failure to submit a non-criminal report did not.
 
 *946
 
 We agree that Whitehurst's failure to file a non-criminal report, in violation of General Order 500-02, did not constitute just cause for his dismissal. As the ALJ explained in Conclusion of Law No. 24, which ECU has not challenged,
 

 [Whitehurst's] failure to submit a non-criminal information report is not unacceptable personal conduct. While indeed policy stated that such a report was to have been submitted, the undisputed evidence was that
 
 the pattern and practice of the department was that this was left to the discretion of the supervisor
 
 . There is no evidence that anyone had ever been disciplined for failure to submit this report, let alone dismissed. The evidence was that [Whitehurst] himself thought the matter was subject to his discretion, and there was no evidence that [Whitehurst's] thinking was either unreasonable or contrary to the pattern and practice of the department.
 

 (emphasis added).
 

 Whitehurst's failure to file a non-criminal report constitutes unacceptable personal conduct in that he acted in violation of a known or written work rule pursuant to 25 N.C.A.C. 1J.0614(8). However, upon consideration of the "discipline imposed in other cases involving similar violations," we agree that this violation did not provide just cause for Whitehurst's dismissal.
 

 Concerning Whitehurst's conduct at the scene, in Conclusion of Law No. 26 the ALJ reasoned that:
 

 [Whitehurst's] conduct at the scene constitutes unacceptable personal conduct. Not only did he fail to gain control prior to the arrival of the other officers, but it seems as though at some point he lost sight of the fact that there had been an assault on campus, despite the fact he was responding to an assault on campus and had someone with obvious signs of injury.
 

 However, the ALJ concluded that Whitehurst's unacceptable personal conduct did not provide just cause for his dismissal. Taking into consideration all of the facts and circumstances of the case, including the factors that our Supreme Court set forth in
 
 Wetherington
 
 , we agree.
 

 We do not discount the harm that resulted from Whitehurst's conduct on the evening of 17 March 2016. However, "just cause" is a concept
 
 *947
 
 "embodying notions of equity and fairness" to the
 
 employee
 
 .
 
 Carroll
 
 ,
 
 358 N.C. at 669
 
 ,
 
 599 S.E.2d at 900
 
 (internal quotation marks omitted). Whitehurst's conduct must be judged with reference to the facts of which he was aware at the time of his actions. After reviewing the whole record, including the ECU surveillance video footage, we conclude that the severity of Whitehurst's conduct was substantially mitigated by his misunderstanding of the situation with which he was presented.
 

 At the time Whitehurst reached the scene, no one was being assaulted. As acknowledged by Chief Lewis and confirmed by ECU's surveillance video footage, upon arrival Whitehurst encountered a group of individuals restraining Myrick. When Whitehurst approached the group, "it was reported to him that [Myrick] ... had assaulted a girl downtown [and] punched her in the face[.]" In that Whitehurst was responding to "an assault," this reasonably led him to believe that the assault had ended, and that the gathered individuals had detained the perpetrator. No one on the scene, including Myrick, informed Whitehurst that there had been a separate assault on Myrick. In fact, when Whitehurst asked Myrick what happened, Myrick "told ... Whitehurst that he ... had been in a fight downtown ... [a]nd ... said nothing about being the victim of an assault [on campus.]" Fairness and equity do not allow just cause for dismissal to be predicated upon Whitehurst's failure to respond appropriately to facts of which he had no knowledge.
 

 In consideration of the "discipline imposed in other cases involving similar violations[,]"
 
 Wetherington
 
 ,
 
 368 N.C. at 592
 
 ,
 
 780 S.E.2d at 548
 
 , the minimal discipline received by Officer Tarkington is also relevant to our just cause analysis. The only ECU officer on the scene privy to information regarding the assault on Myrick was Officer Tarkington. Officer Tarkington, however, failed to convey
 
 *634
 
 that information to Whitehurst, for which she was issued a written warning. The relatively light discipline imposed on Officer Tarkington for a similar violation weighs heavily against a determination that just cause existed for Whitehurst to be cashiered.
 

 Whitehurst's discipline-free work history is also relevant to this just cause analysis. We agree with ECU that Chief Lewis was aware of Whitehurst's work performance history when he made the decision to dismiss Whitehurst, despite the ALJ's finding to the contrary. However, Chief Lewis's discounting of that factor has no bearing on this Court's consideration of it in our
 
 de novo
 
 review.
 

 Whitehurst was subject to regular performance reviews by ECU and generally received above average ratings. Jimmy Cannon, an ECU police
 
 *948
 
 sergeant who worked with Whitehurst for roughly twelve years, testified that "He's been an outstanding peer to work with especially when it comes to his knowledge of police procedures and police work in general. He's one of the best ... that I've worked with[.]" Whitehurst had worked for ECU for twelve years, with no disciplinary action. This factor also mitigates against a finding that just cause existed to dismiss Whitehurst from employment based on his conduct the night of 17 March 2016.
 

 Lastly, we note that Whitehurst's position as a supervising law enforcement officer does not lower the standard that must be met in order to justify his dismissal. ECU is correct in citing
 
 Blackburn v. N.C. Dep't of Public Safety
 
 for the proposition that there is a "degree of responsibility associated with [Whitehurst's] position" as a supervising law enforcement officer.
 
 Blackburn
 
 , --- N.C.App. at ----,
 
 784 S.E.2d at 528
 
 .
 
 Blackburn
 
 does not, however, hold that anything less than just cause is required to dismiss a State employee where that employee is a law enforcement officer. In
 
 Blackburn
 
 , we simply held that, given Petitioner Blackburn's duty to ensure the health and safety of inmates, his "actions of (1) allowing [an inmate] to remain lying on his bed in handcuffs for five days, (2) without receiving anything to drink during this time, and (3) without any attention to [the inmate's] condition," directly contributed to that inmate's death, and constituted "just cause to terminate [Blackburn] for grossly inefficient job performance."
 

 Id.
 

 Whitehurst's violations in the present case clearly do not rise to the level of severity present in
 
 Blackburn
 
 .
 

 We agree that Whitehurst's position as a law enforcement officer imposed duties upon him which are not commonly shared by other State employees. Nonetheless, Whitehurst is entitled to the exacting protections given to all career State employees pursuant to
 
 N.C. Gen. Stat. § 126-35
 
 . Considering all of the facts and circumstances of the present case, we conclude that ECU did not have just cause to dismiss Whitehurst from employment.
 

 IV. ALJ's Authority to Demote Whitehurst
 

 ECU next argues that the ALJ did not have the authority to order that Whitehurst be demoted instead of dismissed after having found that just cause existed to impose "some" discipline on Whitehurst. This argument is unavailing.
 

 " 'Unacceptable personal conduct does not necessarily establish just cause for all types of discipline.' "
 

 *635
 

 *949
 

 Harris
 
 , --- N.C.App. at ----,
 
 798 S.E.2d at 137
 
 ,
 
 aff'd per curiam
 
 , --- N.C. ----,
 
 808 S.E.2d 142
 
 (2017 N.C. LEXIS *1020) (quoting
 
 Warren
 
 ,
 
 221 N.C.App. at 383
 
 ,
 
 726 S.E.2d at
 
 925 ). Rather, "[j]ust cause must be determined based upon an examination of the facts and circumstances of each individual case."
 

 Id.
 

 This inquiry extends not only to whether just cause existed to discipline generally, but also to whether just cause existed to impose the particular disciplinary action taken.
 

 Upon its review of a contested case, the ALJ "may grant the following relief: (1) [r]einstate [the] employee to the position from which the employee has been removed[,] (2) [o]rder the employment, promotion, transfer, or salary adjustment of any individual to whom it has been wrongfully denied[, or] (3)
 
 [d]irect other suitable action to correct the abuse
 
 [.]"
 
 N.C. Gen. Stat. § 126-34.02
 
 (a) (2016) (emphasis added). As our Supreme Court explicitly affirmed in
 
 Harris
 
 , the ALJ has the "authority to direct other suitable action upon a finding that just cause does not exist for the particular action taken by the agency[,]" which "includes the authority to impose a less severe sanction as 'relief.' "
 
 Harris
 
 , --- N.C.App. at ----,
 
 798 S.E.2d at 138
 
 ,
 
 aff'd per curiam
 
 , --- N.C. ----,
 
 808 S.E.2d 142
 
 (2017 N.C. LEXIS *1020) (quotation marks and alteration omitted). After reviewing the particular facts and circumstances of the case, "the ALJ may impose an alternative sanction within the range of allowed dispositions[ ]" set forth in 25 NCAC 1J.0604(a) : "(1) written warning; (2) Disciplinary suspension without pay; (3) Demotion; and (4) Dismissal."
 

 Id.
 

 In the present case, based on the information he had received, Whitehurst had no reason to believe that any of the individuals present at the scene were perpetrators of an assault on Myrick. Nevertheless, these individuals were potential witnesses, and Whitehurst made no attempt to prevent them from leaving the scene and did not request that they not leave the scene. The ECU surveillance video footage shows that after about 45 seconds, eight of the ten people present at Whitehurst's arrival had been allowed to walk away. As the Internal Affairs investigation found, this was in violation of General Orders 1400-01 and 1100-01. This also constituted unacceptable personal conduct for which no reasonable person should expect to receive a prior warning. Accordingly, while just cause did not exist to dismiss Whitehurst, "considering the totality of the unique facts and circumstances of the present case,"
 

 id.
 

 at ----,
 
 798 S.E.2d at 137-38
 
 , we affirm the ALJ's determination that demotion was an appropriate form of "other suitable action to correct the abuse[.]"
 
 N.C. Gen. Stat. § 126-34.02
 
 (a)(3) (2016).
 

 *950
 

 Conclusion
 

 For the reasons explained herein, the Final Decision of Administrative Law Judge Donald J. Overby is
 

 AFFIRMED.
 

 Judges STROUD and ARROWOOD concur.