IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-561

 No. COA20-604

 Filed 19 October 2021

 Office of Administrative Hearings, No. 19 OSP 04910

 ANNETTE LOCKLEAR, Petitioner,

 v.

 NORTH CAROLINA DEPARTMENT OF AGRICULTURE AND CONSUMER
 SERVICES, Respondent.

 Appeal by petitioner from final decision entered 18 May 2020 by

 Administrative Law Judge Tenisha S. Jacobs in the Office of Administrative

 Hearings. Heard in the Court of Appeals 25 May 2021.

 Jennifer J. Knox, for petitioner-appellant.

 Attorney General Joshua H. Stein, by Assistant Attorney General Christopher
 R. McLennan, for respondent-appellee.

 STROUD, Chief Judge.

¶1 Annette Locklear (“Petitioner”) appeals from a final decision by an

 administrative law judge (“ALJ”) following a contested case hearing that found the

 North Carolina Department of Agriculture and Consumer Services (“the

 Department” or “Respondent”) had just cause to dismiss Petitioner from her career

 state employment for unacceptable personal conduct. Petitioner first argues her

 actions did not constitute unacceptable personal conduct. Then, Petitioner argues
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 even if her actions were unacceptable personal conduct, Respondent still did not have

 just cause to dismiss her. Because after de novo review we determine Petitioner

 engaged in unacceptable personal conduct providing just cause to dismiss her, we

 affirm.

 I. Background

¶2 The uncontested Findings of Fact in this case show Petitioner worked for the

 Department’s1 Structural Pest Control and Pesticides Division, Structural Pest

 Control Section, which enforces the Structural Pest Control Act of North Carolina of

 1955, North Carolina General Statute § 106-65 (2019), prior to her dismissal for

 unacceptable personal conduct. At the time of the conduct at issue, John Feagans

 managed the unit as Petitioner’s direct supervisor; Nicky Mitchell was a co-worker of

 Petitioner with the same duties; and James Burnette, Jr. was the director of the

 division. Alongside those people, Petitioner’s job was to assist with “the licensing and

 certification of individuals authorized to perform structural pest control” work in the

 state. As relevant here, Petitioner processed annual license renewal applications

 using the Agricultural Regulatory System (“the System”).2

¶3 The Findings of Fact describe the importance of the System:

 17. The accuracy of the information in the AgRSys is
 critically important given that it is relied upon by

 1 In the ALJ’s Findings of Fact, the Department is abbreviated “NCDA&CS.”
 2 In the ALJ’s Findings of Fact, the System is abbreviated “AgRSys.”
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 NCDA&CS in regulating the structural pest control
 industry, members of the structural pest control industry
 that require a license/card in order to work, and members
 of the public. (TI pp 28-30, 106-06, 232-33; TII pp 307-09)
 18. In explaining the importance of the AgRSys, Mr.
 Feagans testified:
 [W]ith my job as the manager of the licensing
 system, there is no more important factor than our
 licensing system is accurate. There are too many
 people that rely on the information in this licensing
 system both in our office, out in the field, or the
 general public. And considering we’re licensing
 people to do something potentially dangerous, as far
 as applying pesticides, we need to have a resource
 that we know the qualifications, whether they’re
 legal and -- and in compliance when they make these
 applications, and any other information.

 But it has to be reliable. We have to be able to go to
 this system and trust the information in it . . .
 (TI pp 105-06)
 19. Errors in the AgRSys can reflect negatively on
 NCDA&CS and hinder the ability of NCDA&CS employees
 to complete their investigations and determine if violations
 of the law have occurred. (TI pp 30, 233; TII p 310)
 Additionally, maintaining inaccurate records that handles
 public funds (the renewal fees) could subject NCDA&CS to
 adverse internal/external audit findings. (TI p 109; TII p
 310)

 (Alteration in original).

¶4 Petitioner’s conduct at issue in this case related to a specific license renewal

 application and the related information in the System. On 11 June 2018, Petitioner

 received a renewal application from Pest Management Systems, Inc. (“the Company”)

 along with a $2,260 check (Check #41569) to cover the cost of renewal. When the
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 Company had not heard about the status of its application by 20 June—well beyond

 the expected three to four day time period to process a renewal even during the busy

 renewal season—it called and reached Petitioner’s co-worker Mitchell. Mitchell was

 unable to find the original renewal application, so with the renewal deadline looming,

 she told the Company to resubmit its application along with a new check and

 informed her supervisor, Feagans, about her actions, although Mitchell did not

 communicate with Petitioner. After receiving the application and a new $2,260 check

 (Check #41656), Mitchell processed the renewals, deposited the new check, and

 updated the information in the System on 26 June 2018.

¶5 Once Mitchell had completed the Company’s license renewals, the System

 would reflect the renewals when anyone looked at it. In order to prevent issues after

 a renewal had already been processed, the Department also implemented multiple

 failsafe mechanisms. First, the System would show an error message to anyone

 attempting to proceed with a duplicate renewal and then prohibit such duplicate

 renewal. Second, the Department had paper files where an employee could look to

 determine if renewals had been processed when they received an error message from

 the System. Third, once renewals had been processed, only the IT Department could

 change the pertinent information in the System. Petitioner and Mitchell further both

 knew they were only to contact IT after notifying their supervisor, Feagans, a fact of

 which Petitioner had been reminded as recently as 11 June 2018. Given these fail
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 safes:

 [h]ad Petitioner, or anyone else, attempted to process the
 Pest Management Systems, Inc. renewals after Ms.
 Mitchell had already done so on 26 June 2018, it would be
 obvious that these licenses/cards had already been
 renewed and that depositing an additional check would
 result in the company being erroneously billed a second
 time. (Tl pp 209-12, 225-28, 231)

¶6 Despite those fail safes, and without notifying her supervisor as required, on 2

 July 2018, Petitioner contacted IT to request the check number for the Company’s

 renewal be changed in the System to reflect the check she had originally received,

 Check #41569. After IT made the requested changes, Petitioner undertook a series

 of actions that led to the System reflecting false information and the Department

 overbilling the Company by $2,260:

 50. Following IT making the changes requested by
 Petitioner, the AgRSys “ReceiptNumber” listed Check
 #41569 as having been used to process the 38 license/card
 renewals for Pest Management Systems, Inc. on 26 June
 2018. (Resp. Ex. 7) Additionally, as a result of the changes
 in the AgRSys requested by Petitioner, there was no record
 of Check #41656 in the system and anyone attempting to
 search for that check number would be unable to locate it.
 (TI p 61)
 51. At the hearing, Petitioner admitted that, following her
 requested changes, the AgRSys would have shown that
 Check #41569 was used to issue the Pest Management
 Systems, Inc. renewals on 26 June 2018 and that she did
 not issue those licenses/cards on that date. (TII pp 468-69)
 52. The evidence does show, and the Undersigned does
 find, that following Petitioner’s requested changes to the
 AgRSys, the information reflected in the AgRSys for the
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 altered records was false.
 53. Given the multiple failsafe mechanisms, and the
 abundance of information available to Petitioner indicating
 that the renewals for Pest Management Systems, Inc. had
 already been renewed, the evidence does show, and the
 Undersigned does find that Petitioner knowingly falsified
 records in the AgRSys by her 2 July 2018 request for IT to
 change the Check Number associated with the renewals at
 issue.
 54. After receiving the notification from IT that her
 requested changes had been made, Petitioner deposited
 Check #41569 on 3 July 2018 (22 days after it was
 originally assigned to her for processing). (Resp. Ex. 4 and
 8)
 55. By depositing Check #41569 on 3 July 2018, Petitioner
 over-billed Pest Management Systems, Inc. by $2,260.

¶7 On 7 August 2018, the Company realized it had been double billed and called

 Mitchell to report the problem. After Mitchell came to him to ensure the Company

 received a refund, Feagans began investigating. While Feagans originally believed

 Mitchell had made a mistake, the next day he learned about Petitioner’s request to

 IT to change the information in the System. Following Petitioner’s return from an

 unrelated leave, Feagans asked Petitioner to explain how the receipt number for the

 Company’s license renewal had been changed in the System. Despite multiple

 opportunities to do so over the following days,3 Petitioner never informed Feagans

 3 Between Finding of Fact 60 and Finding 61, the listed year of the events changes,

 without explanation, from 2018 to 2019. Given the record indicates Petitioner returned from
 leave in October 2018, in accordance with Finding 60 and that Petitioner’s dismissal occurred
 on 2 November 2018, the switch to 2019 appears to be a clerical error. The relevant events
 described in the Findings all appear to have occurred in 2018.
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 about her request to IT. In a final meeting with Feagans on 10 October, Petitioner

 again denied requesting IT change the check number in the System and also denied

 that Mitchell had performed the renewals, stating instead that Petitioner herself had

 processed the renewals.

¶8 On 2 November 2018, Petitioner was dismissed for unacceptable personal

 conduct on three grounds:

 1. Material falsification of a State application or other
 employment documentation to include falsification of
 work-related documents (Falsification of records in the . . .
 System);
 2. Conduct for which no reasonable person should expect to
 receive warning (Failure to cooperate with an investigation
 and manipulating the licensing system in an attempt to
 falsely implicate a coworker and conceal your own wrongful
 actions); and
 3. Conduct unbecoming a State employee that is
 detrimental to State service (Failure to cooperate with an
 investigation and manipulating the licensing system in an
 attempt to falsely implicate a coworker and conceal your
 own wrongful actions).

 Following her dismissal, Petitioner filed an internal grievance, and, following a Step

 2 Hearing, her dismissal was upheld on 18 January 2019. Petitioner then filed a

 petition commencing a contested case in the Office of Administrative Hearings. The

 ALJ’s final decision following a contested case hearing affirmed the Department’s

 decision to dismiss Petitioner based on unacceptable personal conduct. Petitioner

 appeals.
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 II. Analysis

¶9 Career state employees receive statutory protections from being, inter alia,

 discharged without “just cause.” N.C. Gen. Stat. § 126-35(a) (2019). Just cause

 includes two potential bases for adverse disciplinary action: (1) action “imposed on

 the basis of unsatisfactory job performance” or (2) action “imposed on the basis of

 unacceptable personal conduct.” 25 N.C. Admin. Code 1J.0604(b). Petitioner was

 dismissed for unacceptable personal conduct, so the issues here arise only from that

 basis.

¶ 10 Focusing on that basis, in Warren v. North Carolina Dept. of Crime Control &

 Public Safety, North Carolina Highway Patrol, this Court established a three-part

 test for determining whether just cause existed for adverse employment action

 against career state employees based on unacceptable personal conduct:

 The proper analytical approach is to first determine
 whether the employee engaged in the conduct the employer
 alleges. The second inquiry is whether the employee’s
 conduct falls within one of the categories of unacceptable
 personal conduct provided by the Administrative Code.
 Unacceptable personal conduct does not necessarily
 establish just cause for all types of discipline. If the
 employee’s act qualifies as a type of unacceptable conduct,
 the tribunal proceeds to the third inquiry: whether that
 misconduct amounted to just cause for the disciplinary
 action taken. Just cause must be determined based “upon
 an examination of the facts and circumstances of each
 individual case.”

 221 N.C. App. 376, 383, 726 S.E.2d 920, 925 (2012) (quoting North Carolina Dept. of
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 Environment and Natural Resources v. Carroll, 358 N.C. 649, 669, 599 S.E.2d 888,

 900 (2004)).

¶ 11 Here, Petitioner only argues the ALJ’s decision erred with respect to Warren’s

 second and third inquiries.4 Petitioner first argues she prevails under the second

 inquiry because her actions did not constitute unacceptable personal conduct.

 Although the argument is not listed as a separate issue presented, Petitioner then

 raises an issue under the third inquiry when she contends this Court should find no

 just cause to dismiss her because “something less than dismissal was the proper

 discipline for her actions.” After addressing the standard of review, we will address

 each of the two contested inquiries in turn.

 A. Standard of Review

¶ 12 As both parties agree, the standard of review for an administrative agency’s

 decision is governed by North Carolina General Statute § 150B-51 (2019), which

 provides:

 (b) The court reviewing a final decision may affirm the
 decision or remand the case for further proceedings. It may
 also reverse or modify the decision if the substantial rights
 of the petitioners may have been prejudiced because the

 4 Petitioner also would fail on the first inquiry because she did not challenge any of

 the ALJ’s Findings of Fact on appeal. When Findings of Fact are not challenged, they are
 binding on appeal. Smith v. N.C. Department of Public Instruction, 261 N.C. App. 430, 444,
 820 S.E.2d 561, 570–71 (2018) (citing Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729,
 731 (1991)). Because the Findings are binding on appeal, they establish “that [Petitioner]
 did, in fact, engage in the conduct described therein. Accordingly, the first prong of the
 Warren test is satisfied . . . .” Id., 261 N.C. App. at 444, 820 S.E.2d at 571.
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional provisions;
 (2) In excess of the statutory authority or jurisdiction
 of the agency or administrative law judge;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Unsupported by substantial evidence admissible
 under G.S. 150B-29(a), 150B-30, or 150B-31 in view
 of the entire record as submitted; or
 (6) Arbitrary, capricious, or an abuse of discretion.
 (c) . . . With regard to asserted errors pursuant to
 subdivisions (1) through (4) of subsection (b) of this section,
 the court shall conduct its review of the final decision using
 the de novo standard of review. With regard to asserted
 errors pursuant to subdivisions (5) and (6) of subsection (b)
 of this section, the court shall conduct its review of the final
 decision using the whole record standard of review.

¶ 13 As subsection (c) explains, the standard of review depends on the type of case.

 N.C. Gen. Stat. § 150B-51(c). The differing standards of review can be broken down

 along the lines of the three inquiries under Warren as well. In Carroll—the case

 which Warren would later interpret, 221 N.C. App. at 380–83, 726 S.E.2d at 924–25—

 the Supreme Court explained “[d]etermining whether a public employer had just

 cause to discipline its employee requires two separate inquiries: first, whether the

 employee engaged in the conduct the employer alleges, and second, whether that

 conduct constitutes just cause for [the disciplinary action taken].” Carroll, 358 N.C.

 at 665, 599 S.E.2d at 898 (internal quotations omitted) (second alteration in original).

 This Court has previously explained that the first Carroll inquiry is a question of fact

 reviewed under the whole record test and that the second Carroll inquiry is a question
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 of law reviewed de novo. Whitehurst v. East Carolina University, 257 N.C. App. 938,

 943–44, 811 S.E.2d 626, 631 (2018). Warren determined that Carroll’s second inquiry

 required two separate analyses, which became the second and third Warren inquiries.

 See Warren, 221 N.C. App. at 380–83, 726 S.E.2d at 924–25 (explaining the difficulty

 in reconciling within the second Carroll inquiry Carroll’s insistence that a court find

 unacceptable personal conduct and that not all unacceptable personal conduct

 amounted to just cause before deciding to “balance the equities after the unacceptable

 personal conduct analysis” as part of three inquiry framework).

¶ 14 Thus, relying on Whitehurst provides the following standards of review.

 Warren’s first inquiry mirrors Carroll’s first inquiry. Compare Warren, 221 N.C. App.

 at 383, 726 S.E.2d at 925 with Carroll, 358 N.C. at 665, 599 S.E.2d at 898. As a

 result, the first Warren inquiry employs the same standard of review as the first

 Carroll inquiry, the whole record test. See Whitehurst, 257 N.C. App. at 943, 811

 S.E.2d at 631 (explaining first Carroll inquiry uses whole record test). Given the

 second and third Warren inquiries both derive from the second Carroll inquiry, they

 employ the same standard of review as the second Carroll inquiry, de novo review.

 See id., 257 N.C. App. at 943–44, 811 S.E.2d at 631 (explaining the second Carroll

 inquiry uses de novo review).

¶ 15 Here, Petitioner only raises—and only can raise, see supra footnote 4—issues

 under the second and third Warren inquiries. As a result, both issues are reviewed
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 de novo. “Under the de novo standard of review, the trial court considers the matter

 anew and freely substitutes its own judgment for the agency’s.” Wetherington v.

 North Carolina Dept. of Public Safety, 368 N.C. 583, 590, 780 S.E.2d 543, 547 (2015)

 (“Wetherington I”) (internal quotations and alterations omitted).

 B. Warren Inquiry Two: Unacceptable Personal Conduct

¶ 16 Petitioner first argues “none of [Petitioner’s] actions constitute unacceptable

 personal conduct under the law,” which aligns with Warren’s second inquiry. Warren,

 221 N.C. App. at 383, 726 S.E.2d at 925. First, Petitioner contends she could not have

 falsified records in the System because the term “falsify . . . indicates knowledge of

 untruth” and there is no evidence Petitioner “had any motive to falsify records” or

 “even knew that she was entering” inaccurate information. Petitioner then argues

 she also did not fail to cooperate with the investigation because she “made a mistake

 and did not intend to falsify the data” such that “it is more logical to conclude that

 any statements made to her supervisor during the investigation were the result of” a

 lapse in memory.

¶ 17 Unacceptable personal conduct “is a broad ‘catch-all’ category that

 encompasses a wide variety of misconduct by State employees that can result in

 dismissal without the need for a prior warning.” Smith, 261 N.C. App. at 444, 820

 S.E.2d at 571. As relevant here, unacceptable personal conduct includes:

 (a) conduct for which no reasonable person should expect
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 to receive prior warning;
 ...
 (e) conduct unbecoming a state employee that is
 detrimental to state service;
 ...
 (h) falsification of a state application or in other
 employment documentation.

 25 N.C. Admin. Code 1J.0614(8). In the past, this court has clarified conduct

 unbecoming under subsection (e) does not require a showing of actual harm, “only a

 potential detrimental impact (whether conduct like the employee’s could potentially

 adversely affect the mission or legitimate interests of the State employer).” Smith,

 261 N.C. App. at 445, 820 S.E.2d at 571 (internal quotations omitted). Additionally,

 as the State Human Resources Manual explains, falsification under subsection (h)

 includes “falsification of work-related documents.” State Human Resources Manual

 § 7, p. 4 (2017).5

¶ 18 Here, the ALJ’s Findings of Fact are undisputed and therefore binding on

 appeal. Smith, 261 N.C. App. at 444, 820 S.E.2d at 570–71 (citing Koufman, 330 N.C.

 at 97, 408 S.E.2d at 731). The ALJ found that after Petitioner’s requested changes

 were made to the System, the information in the System “was false” because the

 System would have indicated the check number she used was for work done on 26

 June 2018, which Petitioner admitted was not the date she issued a license renewal.

 5 Available at: https://oshr.nc.gov/media/1580/open (as of 9 September 2021).
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 Further, “[g]iven the multiple failsafe mechanisms, and the abundance of information

 available to Petitioner indicating that the renewals for [the Company] had already

 been renewed,” the ALJ found “Petitioner knowingly falsified records” in the System.

 (Emphasis added) Those two findings alone show Petitioner falsified work related

 documents, which amounts to unacceptable personal conduct under 25 N.C. Admin.

 Code 1J.0614(8) and the State Human Resources Manual § 7, p.4.

¶ 19 The same findings also refute Petitioner’s argument she did not know she was

 entering inaccurate information because Petitioner “knowingly falsified” the

 information. (Emphasis added) Further, the System included numerous fail safes to

 prevent such inadvertent error. The System would provide an error message to

 anyone trying to proceed with a license renewal that had already been completed,

 prohibit such duplicate renewal, and indicate in the hard copy file who had renewed

 the licenses and on what date. Given those fail safes, we agree with the ALJ’s binding

 Finding of Fact that Petitioner knowingly falsified the records. Additionally, the false

 nature of the information in the System would be apparent to anyone who looked.

 The System said Petitioner had completed the work on 26 June even though she did

 not make a request to IT to enable her to perform the work until 2 July. Based on

 the circumstances, Petitioner knew she was entering false information to the System

 regardless of her current attempt to claim otherwise.

¶ 20 Petitioner’s argument she lacked motive is similarly unconvincing. She cites
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 no authority indicating motive is a relevant consideration when determining whether

 she falsified a work-related document. Additionally, even Petitioner’s own definition

 of falsify requires merely knowledge of untruth, not a specific reason for causing the

 untruth. Thus, using Petitioner’s definition, the undisputed facts show Petitioner

 falsified a work related document.

¶ 21 The falsification basis alone would be enough for Petitioner to fail on the second

 Warren inquiry because “[o]ne act of [unacceptable personal conduct] presents ‘just

 cause’ for any discipline, up to and including dismissal.” Hilliard v. North Carolina

 Dept. of Correction, 173 N.C. App. 594, 597, 620 S.E.2d 14, 17 (2005). However, the

 ALJ also concluded Petitioner had committed unacceptable personal conduct on the

 basis that she engaged in “conduct unbecoming a state employee that is detrimental

 to state service.” 25 N.C. Admin. Code 1J.0614(8)(e). While Petitioner does not

 clearly state she is challenging this basis, we assume she is because she argues she

 “had no motive or reason to lie or be uncooperative in the ensuing investigation” and

 such failure to cooperate was listed as a basis for the conduct unbecoming charge in

 her original dismissal letter. First, to the extent that this argument is based on her

 argument that she did not knowingly falsify records, it fails because the uncontested

 Findings of Fact support that Petitioner knowingly falsified the information in the

 System. Second, other Findings of Fact layout how Petitioner lied and was

 uncooperative in the ensuing investigation regardless of whether she had motive to
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 be. Petitioner repeatedly failed to inform her supervisor that she had contacted IT to

 request they change information in the System and also falsely told her supervisor

 that she, rather than her co-worker Mitchell, had completed the Company’s renewals.

 These undisputed facts indicate Petitioner failed to cooperate in the investigation,

 supporting the separate conduct unbecoming basis for finding unacceptable personal

 conduct.

¶ 22 The conduct unbecoming basis also finds strong support in the record based on

 Petitioner’s other actions. As the uncontested Findings of Fact state, the System’s

 accuracy in general is important because the public uses it to confirm that people

 applying potentially dangerous pesticides are licensed and because the state uses it

 to regulate the industry and conduct investigations as necessary. The System also

 contains records related to public funds, and, thus, inaccuracies could subject the

 Department to adverse audit findings. The inaccuracies Petitioner caused resulted

 in the Company being temporarily overbilled by $2,260. Based on those facts,

 Petitioner’s conduct “could potentially adversely affect the mission or legitimate

 interests of the State employer,” as required to conclude an employee committed

 unbecoming conduct, and, in fact, Petitioner’s actions did cause such harm. Smith,

 261 N.C. App. at 445, 820 S.E.2d at 571. Thus, even if Petitioner had not falsified

 records, as we concluded above, she still committed conduct unbecoming of a state

 employee and thus engaged in unacceptable personal conduct. Based on our de novo
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 review, we conclude Petitioner committed unacceptable personal conduct, thereby

 satisfying the second Warren inquiry.

 C. Warren Inquiry Three: Just Cause

¶ 23 Finally, Petitioner contends the ALJ erred in conducting Warren’s third

 inquiry, which requires determining “whether th[e] misconduct amounted to just

 cause for the disciplinary action taken.” Warren, 221 N.C. App. at 383, 726 S.E.2d at

 925. Petitioner first contends she was never “told the truth” that the application had

 been reassigned to her coworker Mitchell and argues this “deliberate[] exclu[sion]

 from important office communications” and then firing her “when she erred in the

 absence of that information . . . is simply not the equity and fairness to the employee

 required in the just cause context.” (Emphasis in original) (internal quotations

 omitted) Petitioner then separately argues we should reconsider the relevant just

 cause factors because they “show that something less than dismissal was the proper

 discipline for [Petitioner’s] actions.”

¶ 24 When making the just cause determination, the reviewing court must examine

 “the facts and circumstances of each individual case” because just cause “is a flexible

 concept, embodying notions of equity and fairness.” Carroll, 358 N.C. at 669, 599

 S.E.2d at 900 (internal quotations omitted). To aid in making that individualized

 determination during Warren’s third inquiry, we look at the factors set forth in

 Wetherington I. Whitehurst, 257 N.C. App. at 945, 811 S.E.2d at 632. Those factors
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 include: “the severity of the violation, the subject matter involved, the resulting harm,

 the [employee]’s work history, or discipline imposed in other cases involving similar

 violations.” Wetherington I, 368 N.C. at 592, 780 S.E.2d at 548. We have recently

 explained that, in context, the word “or” in the list “must be read as ‘and’ when applied

 to the factors which should be considered.” Wetherington v. North Carolina Dept. of

 Public Safety, 270 N.C. App. 161, 189–90, 840 S.E.2d 812, 831 (2020) (“Wetherington

 II”). Thus, courts must consider “any factors for which evidence is presented.” Id.,

 270 N.C. App. at 190, 840 S.E.2d at 832.

¶ 25 Petitioner first contends she was not afforded the general “equity and fairness

 to the employee required in the just cause context” because “she was deliberately

 excluded from important office communications regarding matters to which she had

 been assigned, and then fired when she erred in the absence of that information.

 (Emphasis removed) In support of this argument, Petitioner cites Whitehurst for the

 point that “an employee’s conduct must be judged with reference to the facts of which

 he was aware at the time of his actions.”

¶ 26 Petitioner’s reliance on Whitehurst is misplaced. Whitehurst states the cited

 point in the context of a case where a police officer knew that a person had committed

 an assault but did not know that the same person had separately been assaulted

 because no one told him about the second assault, including the victim of the second

 assault when the officer explicitly asked him what happened. 257 N.C. App. at 947,
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 811 S.E.2d at 633. In that case, the officer did not have facts held against him in a

 situation where he took steps to try to ascertain the unknown facts. By contrast, here

 Petitioner did not act in a way that would have led her to uncover the facts she now

 complains were withheld from her. Beyond the System’s failsafe mechanisms that

 we have already discussed, the uncontested Findings of Fact detail how Petitioner

 was supposed to notify her supervisor before requesting IT make changes in the

 System but failed to take that step. Had Petitioner acted properly and asked her

 supervisor before contacting IT, her supervisor, who knew that Petitioner’s co-worker

 had inquired about the renewal application before going on to process it herself, would

 have informed Petitioner that the co-worker had processed the application already.

 Thus, this case is not similar to Whitehurst because here Petitioner did not try to

 uncover the unknown facts about which she now complains despite Petitioner being

 told to follow a process that would have uncovered those very facts.

¶ 27 Further, Petitioner still ultimately decided to enter false information into the

 System as laid out above. Other people failing to inform her of certain facts did not

 change her own actions. Thus, Petitioner’s argument she was not afforded the

 general equity and fairness underlying just cause does not sway us.

¶ 28 Turning to Petitioner’s second argument, we are asked to reweigh the

 Wetherington I factors, which include: “the severity of the violation, the subject

 matter involved, the resulting harm, the [employee]’s work history, [and] discipline
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 imposed in other cases involving similar violations.” Wetherington I, 368 N.C. at 592,

 780 S.E.2d at 548; see Wetherington II, 270 N.C. App. at 189–90, 840 S.E.2d at 831

 (explaining the “or” in the original factors list must be read as “and” given the

 context). We briefly address each factor again relying on the uncontested Findings of

 Fact.

¶ 29 Taking the first two factors together, the violation is severe precisely because

 of the subject matter involved. As explained previously, the System relies on accurate

 information to protect the public from unlicensed people performing potentially

 dangerous pesticide applications. Petitioner herself even verified the importance of

 the System having accurate information because she checks the System to verify

 licensure status. Given the importance of the integrity of the System in protecting

 the public, Petitioner’s violation was severe.

¶ 30 Petitioner’s violation was also severe because of the resulting harm.

 Petitioner’s actions led to the Company being double billed and thus overpaying

 $2,260. While a refund was issued about a month later, the Company still lacked

 money it should rightfully have had for that month. Further, the Company itself

 discovered the error and was “not happy” according to Petitioner’s co-worker Mitchell,

 who received their call, which indicates this instance was one of the situations where

 an error in the System “reflect[ed] negatively” on the Department leading to

 reputational harm. Thus, while Petitioner contends the ALJ found no harm resulted,
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 we conclude on de novo review that Petitioner’s actions caused actual harm both to

 the overbilled Company and to the Department’s reputation.

¶ 31 Examining the fourth factor, Petitioner’s work history also favors finding just

 cause. Petitioner’s supervisors described her as “uncooperative, aggressive towards

 her coworkers, and disrespectful and dismissive” during “the course of her

 employment.” (Internal quotations omitted) They also described her work as

 “oftentimes unacceptable” and merely “acceptable at best,” an assessment borne out

 by her overall “Does Not Meet Expectations” rating in her 2017-2018 performance

 review. Further, Petitioner had already received a prior written warning for

 unacceptable personal conduct and a two-week disciplinary suspension without pay

 for a violation of the workplace violence policy. Additionally, Petitioner’s supervisors

 had attempted to help improve her performance and workplace conduct for “over a

 decade” and even reiterated their desire to help her as recently as 30 April 2018, mere

 months before the conduct that led to Petitioner’s dismissal. While Petitioner argues

 the ALJ only examined the prior two years when reviewing her work history, the

 uncontested Findings of Fact describe behavior “over the course of [Petitioner’s]

 employment” and convey attempts to help her improve for “over a decade.”

¶ 32 The record before us resembles another case where this Court recently found

 just cause. There, this Court found just cause when the employee’s work history

 included “a pattern of petulant, inappropriate, and insubordinate behavior . . . that
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 extended over the course of several years” and that did not change “[d]espite repeated

 attempts” from supervisors to help the employee. Smith, 261 N.C. App. at 446–47,

 820 S.E.2d at 572. The record here shows a similar pattern with Petitioner’s

 behavior, which also did not improve after her supervisor’s repeated attempts to help.

 Thus, we similarly conclude Petitioner’s work history supports finding just cause.

¶ 33 The final Wetherington I factor is whether the discipline in this case aligns

 with discipline in similar cases. 368 N.C. at 592, 780 S.E.2d at 548. Petitioner first

 highlights “there was no evidence or findings of fact regarding the disciplined [sic]

 imposed in other cases involving similar violations.” While Petitioner is correct, this

 absence does not impact our overall analysis. The decisionmaker is only required to

 consider factors “for which evidence is presented” such that they cannot rely on one

 factor while ignoring others. Wetherington II, 270 N.C. App. at 190, 840 S.E.2d at

 832 (emphasis added). The ALJ here considered all four other Wetherington I factors

 and could not have considered the similar discipline factor because as Petitioner

 admits, there is no evidence on that factor. Petitioner also repeats her argument that

 the ALJ failed to take into account that no one was disciplined for not informing her

 they separately processed the license renewal, but we have already rejected that

 argument above.

¶ 34 After reviewing each of the Wetherington I factors, equity and fairness support

 the decision to dismiss Petitioner. Thus, after our de novo review, we find just cause
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 to dismiss Petitioner existed.

 D. Findings of Fact Supporting Conclusions of Law

¶ 35 In addition to the arguments within the Warren framework, Petitioner’s

 “Issues Presented” section of the brief also raises as an issue for review whether “the

 trial court’s findings of fact regarding the discipline imposed on Petitioner support its

 conclusions of law?” (Capitalization altered) However, at no point in the remainder

 of the brief does Petitioner discuss this issue or indicate which Conclusions of Law

 are unsupported by the Findings of Fact. As a general matter, issues “in support of

 which no reason or argument is stated[] will be taken as abandoned.” N.C.R. App. P.

 28(b)(6); see also N.C.R. App. P. 28(a) (“Issues not presented and discussed in a party’s

 brief are deemed abandoned.”) (emphasis added). This Court has also previously said

 that when an appellant listed an additional “Issue Presented” in its brief but “fail[ed]

 to argue this issue in the text of the brief” the appellant abandoned the challenge.

 Capital Resources, LLC v. Chelda, Inc., 223 N.C. App. 227, 233 n.4, 735 S.E.2d 203,

 208 n.4 (2012). Here, we similarly conclude Petitioner has abandoned the issue of

 whether the Findings of Fact support the Conclusions of Law by “failing to argue this

 issue in the text of the brief.” Id.

¶ 36 Even if Petitioner had not abandoned the challenge, we still find no error.

 Many of the potentially contested Conclusions of Law concern the second and third

 Warren inquiries, and we have already reviewed those Conclusions de novo and the
 LOCKLEAR V. NC DEP’T OF AGRIC. & CONSUMER SERVS.

 2021-NCCOA-561

 Opinion of the Court

 Conclusions are supported by the uncontested Findings of Fact. Further, as stated

 above, we did not review the Conclusions for the first Warren inquiry because they

 simply relied on the uncontested Findings of Fact. See supra footnote 4. Thus, even

 if the issue is not abandoned, the Findings of Fact support the Conclusions of Law

 based on what we have already explained.

 III. Conclusion

¶ 37 After de novo review of the two contested Warren inquires, we find there was

 just cause to dismiss Petitioner. To the extent Petitioner has not abandoned the

 issue, the Findings of Fact support the Conclusions of Law. Therefore, we affirm the

 decision of the ALJ upholding Petitioner’s dismissal.

 AFFIRMED.

 Judges HAMPSON and GRIFFIN concur.